1  L. Bishop Austin (SBN 175497)
   L. Bishop Austin & Associates
2  3250 Wilshire Blvd., Ste 1500
   Los Angeles, CA 90010
3  Telephone (213) 388-4939
   Facsimile (213) 388-2411
4
5
   Attorney for Debtors/Movants
6

7          UNITED STATES BANKRUPTCY COURT

8       CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES  DIVISION

9

10  *IN RE*                          )  Chapter 13
                                     )  Case No. 2:09-bk-10002-AA
11                                   )
12  ANA E PEREZ,                     )  **NOTICE OF DEBTOR'S MOTION AND**
                                     )  **MOTION FOR VALUATION OF**
13                                   )  **SECURITY, DETERMINATION OF**
                                     )  **SECURED STATUS, AVOIDANCE OF**
14          Debtors/Movants          )  **LIEN, AND MODIFICATION OF**
                                     )  **RIGHTS OF LIENHOLDER**
15                                   )  **CITIMORTGAGE; AND PERMISSION**
                                     )  **TO BE EXCUSED FROM MAKING**
16                                   )  **FURTHER POST-PETITION**
                                     )  **MORTGAGE PAYMENTS TO**
17                                   )  **RESPONDENT, CITIMORTGAGE, THE**
                                     )  **SECOND DEED OF TRUST HOLDER**
18                                   )  **ONLY, ITS ASSIGNEES, TRANSFEREES**
                                     )  **AND/OR SUCCESSOR(S) IN INTEREST;**
19                                   )  **MEMORANDUM OF POINTS AND**
                                     )  **AUTHORITIES, DECLARATIONS IN**
20                                   )  **SUPPORT THEREOF**
                                     )
21                                   )  11 U.S.C. §§506(a) and 1322(b); FRBP 3012
                                     )
22                                   )  Date:        February 26, 2009
                                     )  Time:        11:00 A.M.
23                                      Location:    255 E Temple Street
                                                     Los Angeles, CA 90012
24                                      Courtroom:   1375
25
26
27
28  _____

          -1-

**TO THE HONORABLE ALAN A. AHART, UNITED STATES BANKRUPTCY JUDGE; KATHY A. DOCKERY, CHAPTER 13 TRUSTEE; CITIMORTGAGE (CITI 2ND TD) RESPONDENT; AND ALL OTHER INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that on February 26, 2009 at 11:00 A.M., or as soon thereafter as the matter may be heard, in Courtroom 1375 of the above-entitled court, located at 225 E. Temple Street, Los Angeles, CA 90012, Debtor ANA E PEREZ, through undersigned counsel, L. Bishop Austin, will move the Honorable Court for a valuation of security under Rule 3012 of the <u>Federal Rules of Bankruptcy Procedure</u>, determination of secured status under 11 <u>United States Code</u> § 506(a) ad avoidance of lien and modification of the rights of lienholder under 11 <u>United States Code</u> §1322(b)(2).

This motion is based upon this notice, the attached memorandum of points and authorities, and Declaration of Debtor ANA E PEREZ, and Declaration of California Licensed Real Estate Appraiser as well as the records and files in this action, and such other evidence as may be presented at the hearing on this matter.

**Pursuant to Local Rule 9013-1(1)(g), any response to this motion shall be filed with the Clerk of the Court and served on all interest parties no later than fourteen (14) days prior to the above hearing date. Failure to do so may be deemed as a waiver of the objection to the foregoing.**

Dated:  <u>January 30, 2009</u>                    Respectfully submitted,


                                        L. Bishop Austin (SBN 175497)
                                        Attorney for Debtor
                                        ANA E PEREZ

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    STATEMENT OF FACTS**

Debtor ANA E PEREZ ("Debtor") filed his Chapter 13 Voluntary Petition on January 1, 2009. A primary asset of the bankruptcy estate is Debtor's single family residence, located at 1310 W 218th Street, Torrance, CA 90501, TRACT NO 3308 E 50 FT OF LOT 5 "subject property"), the property at issue in this motion.

At the commencement of the instant case, Debtor was indebted to WELLS FARGO HOME MORTGAGE (WELLS FARGO 1st TD), the beneficial holder of a promissory note secured by a first deed of trust, for an outstanding balance of approximately $543,999.25. This amount is inclusive of all outstanding pre-petition principal and interest arrears. Declaration of ANA E PEREZ ("Debtor's Declaration"), concurrently filed and attached herein; *see also* WELLS FARGO's most current monthly mortgage statement, attached herein as **Exhibit A**.

Debtor is also indebted to CITIMORTGAGE (CITI 2nd TD), the respondent and the beneficial holder of a promissory note secured by a second deed of trust. As of the date of the commencement of this case, Debtor was indebted to CITIMORTGAGE 2nd TD for an outstanding balance of approximately $84,144.49, inclusive of outstanding pre-petition principal and interest arrears. Debtor's Declaration; *see also* CITIMORTGAGE 2ND TD's most current current mortgage statementattached herein as **Exhibit B**.

Both WELLS FARGO, and CITIMORTGAGE, the first and the second position lenders, are, and have been at all times, secured by legally recorded Deeds of Trust, recorded against the subject property.

Currently, the fair market value ("FMV") of the subject property is approximately $330,000.00, which is $213,665.92 less than the total payoff balance owed to WELLS FARGO as first trust deed holder. Debtor's Declaration; *see also* Declaration of Paul H. Liu, ASA, California Licensed Real Estate Appraiser ("Appraiser Liu") concurrently filed and attached herein. Appraiser Liu appraised the current fair market value of the subject property at $330,000.00 as of January 09, 2009. *See* Appraisal Report attached herein as **Exhibit C**.

## II.    LEGAL DISCUSSION

### A.  Debtor Seeks A Determination Of The Value Of The Subject Property.

A debtor may move the court for a determination of the value of a property in the bankruptcy estate pursuant to <u>Federal Rules of Bankruptcy Procedure</u> (FRBP) Rule 3012.  <u>FRBP</u> provides in pertinent that:

> "[t]he court may determine the value of a claim secured by a lien
> on property in which the estate has an interest, on motion of any
> party in interest and after a hearing on notice to the holder of the
> secured claim and any other entity as the court may direct."

<u>FRBP</u> Rule 3012.

<u>FRBP</u> 3012 implements Section 506(a) of the <u>Bankruptcy Code</u> with respect to valuation of a secured claim in order to determine the extent to which it is secured and the extend to which it is unsecured. The debtor seeks to extinguish the claimant's lien to the extent permitted under Sections 506(a), 1322(b)(2) and 1325 as provided in the Debtor's Chapter 13 Plan. *See* **Exhibit D**.

Further, **FRBP** Rule 1001 states that the bankruptcy rules "shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding."  The objective of "expeditious and economical administration" of cases under the Bankruptcy Code has frequently been recognized by the courts to be "a chief purpose of the bankruptcy laws." <u>Katchen v. Land</u> (1966) 382 U.S. 323, 328.

Accordingly, Debtor ANA E PEREZ request this Court to determine the value of his single family residence, the subject property, to be $330,000.00, which is in line with its current fair market value.  Debtor's Declaration; *see also* Declaration of the Appraiser Liu.

### B.  Debtor Seeks A Determination Of The Extent Of CITIMORTGAGE 2ND TD' Secured Claim

-4-

Chapter 13 cases, such as the instant case, allow bifurcations of a claim into secured and unsecured portions. <u>Wilson v. Commonwealth Mortgage Corp.</u> (1990) 895 F.2d 123 (3rd Cir.). Further, 11 <u>United States Code</u> (U.S.C.) Section 506, a section of general applicability, states in relevant part as follows:

> "[a]n allowed claim of a creditor secured by a lien on a property in which the estate has an interest,…is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property…and [alternatively] is an unsecured claim to extent that the value of such creditor's interest…is less than the amount of such allowed claim."

11 <u>U.S.C.</u> §506(a).

In other words, Section 506(a) separates an under-secured creditor's claim into two parts: a secured claim to the extent of the value of the collateral, and an unsecured claim for the balance of the claim. Additionally, subsection (d) of 11 U.S.C. §506 states that, "To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void."

In the case at bar, the total of the first mortgage lien of WELLS FARGO, the first trust deed holder, is under-secured as the secured value is greater that the value of its security interest. Therefore, necessarily, the second trust deed holder's held by Respondent CITIMORTGAGE 2nd TD is totally unsecured.    As such, Debtor requests this Court to determine CITIMORTGAGE 2nd TD's interest herein to be unsecured.

### C. A Totally Unsecured Mortgage Lienholder's Rights May Be Modified Under 11 U.S.C. §1322(b)(2).

#### 1. Modification is Permissible under 11 U.S.C. §1322(b)(2).

A loan which has fully matured prior to the filing of the Chapter 13 petition, or loan which matures during the life of the Chapter 13 plan, may be paid through the plan. Further, Section 1322(b)(2) of the <u>Bankruptcy Code</u> allows a debtor's Chapter 13 plan to modify the rights of secured claims, other than claims totally **secured** by an interest in real property that is the debtors' principal residence. 11 U.S.C. §1322(b)(2) provides in relevant part as follows:

"The plan may...
(b)(2) modify the rights of holders of secured claims, other than a
claim secured by a security interest in real property that is the
debtor's principal residence, or of holders of unsecured claims, or
leave unaffected the rights of holders of any class of claims."

11 U.S.C. §1322(b)(2). This section, especially when read in light of Section 506(a), *supra*, does not preclude modification by a Chapter 13 Plan of the rights of holders of unsecured claims' i.e., junior mortgages which are completely unsecured. In this case, the loan by CITIMORTGAGE 2nd TD had fully matured prior to Debtor's filing of his bankruptcy petition. Further, Respondent CITIMORTGAGE's junior lien claim is wholly unsecured. As such, CITIMORTGAGE 2nd TD's lien may be modified.

2.    *Protections afforded secured claimants in the case of Nobleman v.
American Savings Bank are inapplicable to the case at bar*

Protections otherwise afforded claimants by the case, Nobleman v. American Savings Bank (1993) 113 S.Ct. 2106, are inapplicable here as the senior lien of WELLS FARGO is far in excess of the current fair market value of the subject property. Under Nobleman, a lien cannot be stripped if any portion of the interest was secured. Thus, by implication, when a lien is wholly unsecured, it can be stripped. Courts have consistently distinguished between Nobleman and facts involving a wholly unsecured lien holder. In fact, most reported decisions have rejected the proposition that Nobleman prohibits modification of a totally unsecured lien on a chapter 13 debtor's principal residence. These Courts, along with the 9th Circuit Bankruptcy Appellate Panel, interpret Nobleman to require the existence of an allowable secured claim as the predicate for the protection from modification in U.S.C. §1322(b)(2).

In the 9th Circuit Bankruptcy Appellate Panel Case of *In re* Lam (1997) 121 B.R. 36 (9th Cir. B.A.P.), the Court held that:

The Nobleman decision holding that section 1322(b) bars chapter
13 plan from modifying the rights of holders of claims, secured

only by the debtor's principal residence, ***does not apply*** to holders of totally unsecured claims. The extension of the protections of the section 1322 (b) to wholly unsecured lien holders is contrary to the provisions of the bankruptcy code allowing dischargeability of unsecured claims.

*In re* Lam at 41 (emphasis added).

Similarly, *In re* Geyer (1996) 203 B.R. 726 (S.D. Cal.) sustained the debtor's motion to avoid a lien brought under Bankruptcy Code Section 506(d), holding that a Chapter 13 debtor may strip a lien on the debtor's primary residence when the lienholder's interest is totally unsecured. The Geyer court stated that:

> [T]he term 'secured claim' as used in section 1322(b)(2) has the same meaning as the term "secured claim" in section 506(a). Unless there is some equity to which the creditor's lien attaches, there is no allowed secured claim and no entitlement to the protection against modification contained is section 1322 (b)(2). A chapter 13 debtor may 'strip-off' a lien on his or her primary residence under the plan or under section 506(d) when the lien holder's interest is totally unsecured.

*In re* Geyer, 203 B.R. 726, 729 (S.D. Cal. 1996).

In the case at bar, the real property to be retained in the Chapter 13 Plan is Debtor's principal residence. The value of the subject property is only $330,000.00 while the value of the first deed of trust held by WELLS FARGO is at least $330,000.00. See Debtor's Declaration; *see also* Appraiser Liu Declaration. As such, Respondent CITIMORTGAGE possesses a totally unsecured lien on the debtor's home and does not have an allowable secured claim. Accordingly, CITIMORTGAGE 2ND TD cannot seek protection from modification under 11 U.S.C. §1322 (b)(2) and Debtor may modify the claim and avoid CITIMORTGAGE 2ND TD's lien.

CITIMORTGAGE 2ND TD's secured interest on the second deed of trust is zero since there is no equity to which the second deed of trust can attach. Therefore, the second deed of trust should de extinguished, reconveyed, and treated as unsecured for purposes of the instant Chapter 13 proceeding.

Moreover, in <u>Nobleman,</u> Justice Thomas held that <u>Bankruptcy Code</u> Section 1322(b)(2)

prohibits splitting an under-secured home mortgage holder's claim into its secured and unsecured

portions for purposes of confirmation of a Chapter 13 Plan. <u>Nobleman,</u> 113 S.Ct. 2106. Unlike

the case at bar, in <u>Nobleman,</u> the lien to be stripped was the holder of the first deed of trust for

$71,335.00, and the debtor's principal resident was worth $23,500.00. Thus, the bank's claim

was at least partially secured by the debtor's home. In the case at bar, the lien to be voided is not

the first but the second deed of trust. Further, there can be no reasonable contention that any part

of the second deed of trust is secured. Thus, the facts, reasoning and holding of <u>Nobleman</u> are

inapplicable to the case at bar.   Because claimant possesses a totally unsecured lien on the

debtor's home and does not have an allowable secured claim, claimant cannot seek protection

from modification under 11 U.S.C. §1322 (b)(2) and the debtor may modify the claim and avoid

claimant's lien.

> 3.     ***Dewsnup v. Timm is distinguished from lien stripping in the instant case***

The Chapter 7 case of <u>Dewsnup v. Timm</u> 112 S.Ct 773 (1992) has no application to this

Chapter 13 case.   Justice Scalia, in his dissent in <u>Dewsnup</u>, points out the difference between

Chapter 7 and Chapter 13 lien stripping, stating that:

> Respondents assume…that a <u>debtor</u> in a Chapter 13 cannot strip
> down a mortgage placed on the debtor's home…but that
> assumption may beg the very question the Court answers today.
> True, Section 1322(b)(2) provides that Chapter 13 filers may not
> "modify the rights of secured claims", secured only by a security
> interest  in real property that is the debtor's principal residence.
> But this can be and has been read, in light of Section 506(a), to
> prohibit modification of the mortgagee's rights only with respect to
> the operation of his claim that is ***deemed secured*** under the Code.

<u>Dewsnup</u> (1992) 112 S. Ct. 773, 784 (emphasis added).

Dewsnup was discussed at length in Denver v. Internal Revenue Services, (1994) 164 B.R. 132 (C.D. Cal.). Judge Fenning in Denver discussed the issue of lien stripping in Chapter 13 cases, stating that:

> "The dispositive issue in this case is whether Eastland's undersecured loan may be bifurcated into two claims by applying general principals of Section 506(a) to the mortgage and the protecting only the secured claim by provisions Section 1322(b). We believe it can."

Denver citing *In re* Hart 923 F.2d 1410, 1413 (10th Cir. 1991).

After citing In re Hart, the Denver court went on to the state that:

> If Section 506 does not permit debtors to bifurcate under-secured claims and strip down liens to their collateral value, then all secured creditors would be freed of any concern that debtors could reduce the amount of their lien while retaining property. If Congress did not intend to allow lien stripping in general in Chapter 13 cases, then why would it bother to draft the exclusionary language of Section 1322. As justice Steven's concurring opinion in Nobleman emphasized, the legislative history of Section 1322(b)(2) reflects Congressional desire to provide special protections to residential lenders.

Denver v. IRS at 141.

Here, Debtor filed a Chapter 13 voluntary petition. The real property to be retained in the Chapter 13 Plan is Debtor's principal residence. The value of the subject property is $330,000.00 while the value of the first deed of trust held by WELLS FARGO is at least $543,999.25. Debtor's Declaration; *see also* Appraiser Liu Declaration. Respondent CITIMORTGAGE possesses a totally unsecured lien on Debtor's home and does not have an allowable secured claim. Accordingly, respondent CITIMORTGAGE cannot seek protection from modification under 11 U.S.C. §1322 (b)(2) and Debtor may modify the claim and avoid CITIMORTGAGE 2ND TD's lien. The second deed of trust should be extinguished, reconveyed, and treated as unsecured for purposes of the instant Chapter 13 proceeding.

## III.    CONCLUSION

WHEREFORE, based on the foregoing statutory and decisional authority, the debtor respectfully requests that the Court grant this motion and issue an order that ***second deed of trust*** held by respondent CITIMORTGAGE (CITI 2ND TD) is ordered extinguished and reconveyed upon the successful completion of the debtor's Chapter 13 plan and subsequent Chapter 13 discharge, and deemed an unsecured claim in the instant proceeding and that the debtor be excused from making further payments under Respondent's note.

Dated:    January 30, 2009                    Respectfully submitted,


                                        L. Bishop Austin (SBN 175497)
                                        Attorney for Debtor
                                        ANA E PEREZ

-10-

## DECLARATION OF DEBTOR

## ANA E PEREZ

I, ANA E PEREZ  declare:

     1.     I know the following facts to be true from my own personal knowledge, except those facts which are stated on information and belief and as to those facts I believe them to be true. I could and would competently testify under oath to the truthfulness of the following facts.

     2.     I am the debtor in the Chapter 13 Bankruptcy case, Case No. 2:09-bk-10002-AA. I am the owner of the property located at 1310 W 219th Street, Torrance, CA 90501, TRACT NO. 3303 E 50 FT OF LOT 5(the "subject property")

     3.     The First Deed of Trust on the subject property, held by WELLS FARGO HOME MORTGAGE (WELLS FARGO) is secured by a First Deed of Trust, under Loan Number 0325502235.  WELLS FARGO's most current monthly mortgage statement reflects a total payoff balance of $543,999.25 as of January 09, 2009.  *See* **Exhibit A**, WELLS FARGO'S most current monthly mortgage statement.  I concur with this figure.

     4.     The Second Deed of Trust on the subject property, held by CITIMORTGAGE (CITI 2nd TD), is secured by a Second Deed of Trust under Loan Number 0771331366-1. CITI 2nd TD's most current monthly mortgage statement reflects a total payoff balance of $134,741.22 as December 1, 2008.  *See* **Exhibit B**, CITIMORTGAGE 2nd TD most current monthly mortgage statement.

     5.     On or about January 09, 2009, I retained the services of a California licensed real estate appraiser, Paul H. Liu, ASA, for the purpose of ascertaining the current fair market value of the subject property.  Appraiser Liu appraised the subject property at $330,000.00 as of January 09, 2009.  Attached herein as **Exhibit D** is a true and correct copy of Appraiser Liu's Appraisal Report.  I believe the appraised value is correct based on my knowledge of the property and of local market conditions.

6.     Given the value reflected in the appraisal report, I filed an amended Schedule "A" where I estimated that the fair market value of the subject property to be $330,000.00. A true and correct copy of my amended Schedule "A" is attached and incorporated by reference herein as **Exhibit E**. I based this number on the appraisal report done on my property on January 09, 2009 by Paul H. Liu, ASA.

7.     As a result, I believe that CITIMORTGAGE (CITI 2ND TD)'s claim is wholly unsecured and subject to avoidance upon completion of my proposed Chapter 13 Plan. Accordingly, I am respectfully requesting the Court to determine the value of the subject property and the secured status of the Respondent's claim to be wholly unsecured and subject to avoidance upon completion of my proposed Chapter 13 plan.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and compete to the best of my knowledge. Executed at Los Angeles, California on this 30th day of January , 2009.

Debtor ANA E PEREZ

-12-

## DECLARATION OF PAUL H. LIU, ASA

I, PAUL H. LIU:

1.      I hold a California Real Estate Appraiser License, License Number AR-034000, and am a professional in good standing.  I make this declaration based upon my own personal, firsthand knowledge, my education, training and experience in the field of real estate appraisal and if called as a witness, I could and would competently and truthfully testify thereto.

I was retained by ANA E PEREZ on January 1, 2009 to examine and appraise a single family residence located at, 1310 W 219th Street, Torrance, CA 90501, TRACT NO 3303 E 50 FT OF 5 (the "subject property").

2.      My main and only service is to prepare appraisals for real estate properties in California, of which I perform approximately three (3) to eight (8) residential appraisals per month.

3.      On January 09, 2009, I had occasion to conduct an appraisal of the subject property for ANA E PEREZ. Attached and incorporated by reference herein as Exhibit "C" is a true and correct copy of the January 09, 2009 Appraisal Report I prepared.

6.      In preparing the Appraisal Report, I performed market research, inspected the subject property, both interior and exterior, measured the subject property to determine the square footage, and surveyed the immediate neighborhood.

7.      In determining the fair market value for the subject property, I used both the sales comparison approach and the cost approach, with the greater weight given to the sales comparison approach. I consider the sales approach to be the most reliable in determining fair market value because it more accurately simulates buyers' perceptions and actions.

8.      Based upon my observations, inspection of the subject property, and market research as well as my training, education and experience as a residential appraiser, it is my professional opinion that the subject property has a fair market value of $330,000.00 as of January 30, 2009.

9.      I have no present or contemplated future interest in the subject property described in the Appraisal Report. Neither my employment nor my compensation for this appraisal is contingent upon the value found.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and complete to the best of my knowledge. Executed this 30th day of January 2009 at Los Angeles, California.

Paul H. Liu, ASA
California Licensed Real Estate Appraiser

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

     I am over the age of 18 and not a party to the within action.  My business mailing address is 3250 Wilshire Blvd., Ste 1500, Los Angeles, California 90010.

     On January 30, 2009, I served the following document described as **NOTICE OF DEBTOR'S MOTION AND MOTION FOR VALUATION OF SECURITY, DETERMINATION OF SECURED STATUS, AVOIDANCE OF LIEN, AND MODIFICATION OF RIGHTS OF LIENHOLDER, CITIMORTGAGE; MEMORANDUM OF POINTS AND AUTHORITIES, DECLARATIONS IN SUPPORT THEREOF** on all interested parties in this action by placing  [X] a true copy  [  ] the original thereof enclosed in sealed envelopes addressed as follows:

***Please See Attached Mailing List***

[ x ]  **BY MAIL:** I enclosed a copy in separate envelopes, with postage fully prepaid, addressed to each addressee named below, and deposited each sealed envelope with the United States Postal Service in Los Angeles, California, for delivery as addressed above.

[  ]  **BY OVERNIGHT SHIPPING:** I caused such envelope(s) to be delivered via the above-checked shipper to the addressee(s) designated herein.

[  ]  **BY HAND DELIVERY:** I caused such envelope(s) to be delivered by hand to the addressee(s) designated.

[  ]  **BY FACSIMILE:** I caused said documents(s) to be transmitted to the facsimile number(s) of the addressee(s) designated as follows:

[  ]  **BY ELECTRONIC MAIL:** I caused said documents(s) to be transmitted to the electronic mail address(s) of the addressee(s) designated as follows:

     I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on January 30, 2009, at Los Angeles, California.

_____
Moises Lopez

1  ANA ELSA PEREZ
2  1310 W 218TH ST
   TORRANCE, CA 90501
3

4  L. BISHOP AUSTIN
5  L. BISHOP AUSTIN & ASSOCIATES
   3250 WILSHIRE BLVD., STE 1500
6  LOS ANGELES, CA 90010

7
8  CHAPTER 13 TRUSTEE
   KATHY A DOCKERY
9  700 S. FLOWER ST., STE 1950
   LOS ANGELES, CA 90017
10

11
   CITIMORTGAGE
12 P.O.BOX 6006
   THE LAKES, NV 88901
13

14
   WELLS FARGO HOME MORTGAGE
15 P.O9.BOX 30427
   LOS ANGELES, CA 90030
16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

# Monthly Mortgage Statement

| | |
|---|---|
| Statement Date | 11/19/08 |
| Loan Number | **0157092081** |

## Customer Service

📶 **Online**
yourwellsfargomortgage.com

☎ **Telephone**  **TTY Deaf/Hard of Hearing**
(866) 234-8271  (800) 934-9998

**Hours of Operation**
M - F 6 AM - 10 PM
Sat 8 AM - 2 PM CT  🖨 **Fax**
(866) 278-1179

✉ **Payments**  **Correspondence**
PO Box 30427  PO Box 10335
Los Angeles CA 90030  Des Moines IA 50306

---

IlIiIIilIiIulIiIIillIiIiIIilIilIiIIilIiIlliIIiIIiIIililiIIiIllI
000764 1 FP 0.394  2152/122152/002152 004 01 ALN29D 708
ANA E PEREZ
1308 & 1310 WEST 218TH STREET
TORRANCE CA 90501

## Summary

| | |
|---|---|
| Payment (Principal and/or Interest) | $3,116.66 |
| Optional Product(s) | $0.00 |
| **Current Monthly Payment 12/01/08** | **$3,116.66** |
| Overdue Payments 10/01/08 - 11/01/08 | $6,233.32 |
| Unpaid Late Charge(s) | $311.66 |
| Other Charges | $0.00 |
| **TOTAL PAYMENT DUE 12/01/08** | **$9,661.64** |

**Property Address**
1308 1310 W 218TH ST
TORRANCE CA 90501

| | |
|---|---|
| Unpaid Principal Balance | $543,999.25 |
| *(Contact Customer Service for your payoff balance)* | |
| Interest Rate | 6.875% |
| Interest Paid Year-to-Date | $28,050.02 |
| Escrow Balance | $134.00- |

## Important Messages

Payment in full today will prevent further action from taking place, up to and including acceleration of the note and foreclosure. If you are unable to remit the total amount due, please telephone a loan representative at 1-800-766-0987. Please be advised that regardless of the type of mortgage loan you have, you are eligible for free counseling through HUD approved counseling agencies. For a list of the agencies nearest you, call 1-800-569-4287.

## Activity Since Your Last Statement

| Date | Description | Total | Principal | Interest | Escrow | Late Charge | Other |
|---|---|---|---|---|---|---|---|
| 11/17 | LATE FEE | | | | | $155.83- | |
| 10/29 | HAZARD INS PMT | $134.00- | | | $134.00- | | AMERICAN SECURITY GROUP |

Late charges are assessed after the close of business on the assessment date and only after all payments received have been applied.

---



Please detach and return with your payment

| | |
|---|---|
| Loan Number | 0157092081 |
| Current Monthly Payment Due | $3,116.66 |
| Total Payment Due 12/01/08 | $9,661.64 |
| After 12/16/08 Add Late Fee | $155.83 |
| Total Amount Due After 12/16/08 | $9,817.47 |

*Check here and see reverse for address correction.*

ANA E PEREZ

2152/122152/002152 004 01 ALN29D 708

IlIiIIilIiIIillIiIIilIiIIiIIiIIilIiIIilIiIIilIIilI
WELLS FARGO HOME MORTGAGE
PO BOX 30427
LOS ANGELES CA 90030-0427
IlIiIIilIiIIilIiIIilIIiIIilIiIIilIiIIilIiIIilIIilI

122152/002152 ALN29D 2152 ETM1C016 1

| | | |
|---|---|---|
| Monthly Payment x pmt amt | $ | |
| Additional Principal | $ | |
| Late Charges | $ | |
| Other Charges | $ | |
| Additional Escrow | $ | |
| Total Amount Enclosed (Please do not send cash) | $ | |

*Please specify additional funds. Any additional funds not specified will be applied first to any outstanding charges.*



708 0157092081 9 10000311666032724909661640934998 000000002331486587 4

**EXHIBIT B**

# CITIMORTGAGE

## Account Information

Statement Date: 11/18/08
Property Address: 1308 - 1310 W 218TH ST
TORRANCE CA 90501

ACCOUNT NUMBER: 0771331366-1

| | |
|---|---|
| Type of Mortgage | FIXED RATE MORTGAGE |
| Principal Balance | $134,741.22 |
| Interest Rate | 9.61500% |
| Interest Year to Date | $8,658.09 |

## MORTGAGE ACCOUNT STATEMENT



Take command of your mortgage - Visit Today!
**www.citimortgage.com**



**Customer service 1-800-283-7918***
*Calls are randomly monitored and recorded to ensure quality service.

Would you like an easier way to make your mortgage payment?
**Sign up for E-Z Pay today.**

SIS0071D-264083232008AC11-11/18/08-7-038995-1



ANA PEREZ
1308 W 218TH ST
TORRANCE CA 90501-4001

018995

## Account Activity

| | PAYMENTS RECEIVED | CURRENT PAYMENT DUE |
|---|---|---|
| Date | | 12/01/08 |
| Principal | | $77.20 |
| Interest | | $1,077.79 |
| Total Mortgage Payment | | $1,154.99 |
| Late Charge | | $207.87 |
| Past Due Amount | | $3,464.97 |
| **Total Amount** | | **$4,827.83** |

You must pay the full amount due today. Call our office at 1-800-723-7906.

## Monthly Highlights

Struggling with your mortgage payment? Let us help. Call 1-866-749-0159* today, so we can help you bring your account current. We have payment solutions you may not be aware of - options that may help you save money by avoiding potential fees. So save this number and call us as soon as possible. The sooner you call, the sooner we can help.

**The BiWeekly Advantage℠ Plan** could potentially save you thousands in interest before refinancing! Go to **www.citimortgage.com/biweeklyadvantage** or call **1-866-274-5462*** to learn how.

CMI-SSREG-0708

---

**Detach and return the bottom portion with payment.** Retain the top portion for your records.

Account Number: 0771331366-1

ANA PEREZ
Please designate how you want us to apply any additional funds. Undesignated funds first pay outstanding late charges and fees, then principal. Once paid, additional funds cannot be returned.

☐ Please check box to indicate mailing address/phone number changes and enter on reverse side.
Include account number on check and make payable to:

CITIMORTGAGE, INC.
PO BOX 6006
THE LAKES NV 88901-6006

| | Due Date: | Total Amount Due: |
|---|---|---|
| See detail below: | 12/01/08 | $4,827.83 |

| | |
|---|---|
| Additional Principal: | $ |
| Additional Escrow: | $ |
| If payment received after: 12/16/08 Add late charge of: $69.29 | $ |
| Additional Monthly Payment: | $ |
| **Total Amount Enclosed** | $ |

**Please do not send cash. Please allow 7 to 10 days for postal delivery.**
To ensure timely processing of your mortgage payment, please use the enclosed envelope and coupon. Do not include account inquiries with your payment.

007713313661 0000115499 0000489712 0000482783

**EXHIBIT C**

# APPRAISAL OF REAL PROPERTY

## LOCATED AT:

1308, 1310 W 218TH STREET
TORRANCE, CA 90501
TRACT NO 3308 E 50 FT OF LOT 5

## FOR:

SPECIALTY LOANS

## AS OF:

01/09/2009

## BY:

PAUL H LIU, ASA

## Small Residential Income Property Appraisal Report
File # 0901002

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| SUBJECT | |
|---|---|
| Property Address 1308, 1310 W 218TH STREET | City TORRANCE   State CA   Zip Code 90501 |
| Borrower SALAZAR, TEODORA | Owner of Public Record SALAZAR, TEODORA   County LOS ANGELES |
| Legal Description TRACT NO 3308 E 50 FT OF LOT 5 | |
| Assessor's Parcel # 7346-006-029 | Tax Year 2008   R.E. Taxes $ 7,799.63 |
| Neighborhood Name N/A | Map Reference 764/A6   Census Tract 2932.01 |

Occupant ☒ Owner ☐ Tenant ☐ Vacant   Special Assessments $ N/A   ☐ PUD   HOA $ ☐ per year ☐ per month
Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)
Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) BANKRUPTCY PROCEEDING
Lender/Client SPECIALTY LOANS   Address 2465 W. WHITTIER BLVD, #203, MONTEBELLO, CA 90640
Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?   ☐ Yes ☒ No
Report data source(s) used, offering price(s), and date(s). DATAQUICK, MLS, NDC
THE SUBJECT PROPERTY HAS NOT BEEN LISTED ON MLS IN PAST 12 MONTHS.
I ☐ did ☒ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed. BANKRUPTCY PROCEEDING.

| CONTRACT | |
|---|---|
| Contract Price $ N/A   Date of Contract N/A   Is the property seller the owner of public record? ☐ Yes ☐ No Data Source(s) | |
| Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?   ☐ Yes ☐ No | |
| If Yes, report the total dollar amount and describe the items to be paid.   N/A | |

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | 2-4 Unit Housing Trends | | | 2-4 Unit Housing | | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|---|
| Location | ☐ Urban | ☒ Suburban | ☐ Rural | Property Values | ☐ Increasing | ☒ Stable | ☐ Declining | PRICE | AGE | One-Unit | 90 % |
| Built-Up | ☒ Over 75% | ☐ 25-75% | ☐ Under 25% | Demand/Supply | ☐ Shortage | ☒ In Balance | ☐ Over Supply | $ (000) | (yrs) | 2-4 Unit | 3 % |
| Growth | ☐ Rapid | ☒ Stable | ☐ Slow | Marketing Time | ☐ Under 3 mths | ☒ 3-6 mths | ☐ Over 6 mths | 283  Low  48 | Multi-Family | 2 % |
| | | | | | | | | 552  High  91 | Commercial | 5 % |
| | | | | | | | | 330  Pred.  58 | Other | 0 % |

Neighborhood Boundaries   SUBJECT IS BOUNDED BY: W CARSON ST TO THE NORTH, W 223RD ST
TO THE SOUTH, S WESTERN AVE TO THE WEST, #110 FREEWAY TO THE EAST.
Neighborhood Description   THE SUBJECT IS LOCATED IN AN ESTABLISHED NEIGHBORHOOD, MAJORITY OF HOMES ARE DETACHED,
SINGLE FAMILY RESIDENCES. THERE ARE ALSO LIMITED NUMBER OF MULTI FAMILY AND 2-4 UNIT HOMES, WHICH EXHIBIT
AVERAGE QUALITY WITH AVERAGE LEVEL OF MAINTENANCE. ALL COMMUNITY SERVICES, SCHOOLS, AND EMPLOYMENT CENTERS
ARE WELL LOCATED WITHIN 5 MILES RADIUS FROM THE SUBJECT PROPERTY. NO ADVERSE CONDITIONS WERE NOTED.
Market Conditions (including support for the above conclusions)   THE SUBJECT NEIGHBORHOOD IS FULLY DEVELOPED, MIXED ZONING USES
AREA. THE CURRENT MARKET AND PROPERTY VALUE IN THE AREA APPEARS TO BE DECLINING. TYPICAL FINANCING ARE
CONVENTIONAL MORTGAGE, FHA, VA LOANS AT PREVAILING RATES OR ASSUMPTION OF EXISTING MORTGAGE WITH SECOND
MORTGAGE AT CONVENTIONAL RATES. ESTIMATED SUBJECT MARKETABILITY AT 2-7 MONTHS.

| SITE | |
|---|---|
| Dimensions REFER TO THE PLAT MAP | Area 9,000   Shape RECTANGULAR   View NONE |
| Specific Zoning Classification LAR2 | Zoning Description DUPLEX |
| Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe) | |
| Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use?   ☒ Yes ☐ No If No, describe | |

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street ASPHALT | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley NONE | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No   FEMA Flood Zone X   FEMA Map # 060137 / 1935 F   FEMA Map Date 09/26/2008
Are the utilities and/or off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?   ☐ Yes ☒ No If Yes, describe
THE SIZE, SHAPE AND LANDSCAPING OF THE SITE IS TYPICAL FOR THE AREA. NO APPARENT ADVERSE EASEMENTS,
ENCROACHMENTS OR OTHER ADVERSE CONDITIONS ARE NOTED.

| General Description | | Foundation | | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|---|---|
| Units ☒ Two ☐ Three ☐ Four | | ☐ Concrete Slab ☒ Crawl Space | | Foundation Walls | CONCRETE/AVG | Floors | CPT,TILE/AVG |
| ☐ Accessory Unit (describe below) | | ☐ Full Basement ☐ Partial Basement | | Exterior Walls | STUCCO/AVG | Walls | DRYWALL/AVG |
| # of Stories ONE   # of bldgs. TWO | | Basement Area   N/A sq.ft. | | Roof Surface | C-SHINGLE/AVG | Trim/Finish | WOOD/AVG |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | | Basement Finish   N/A % | | Gutters & Downspouts | METAL/AVG | Bath Floor | TILE/AVG |
| ☒ Existing ☐ Proposed ☐ Under Const. | | ☐ Outside Entry/Exit ☐ Sump Pump | | Window Type | ALMN/SLIDE/AVG | Bath Wainscot | CERAMIC/AVG |
| Design (Style) CONV/AVG | | Evidence of ☐ Infestation | | Storm Sash/Insulated | NONE/YES/AVG | Car Storage | |
| Year Built 1961 | | ☐ Dampness ☐ Settlement | | Screens | YES/AVG | ☐ None | |
| Effective Age (Yrs) 24 | | Heating/Cooling | | Amenities | | ☒ Driveway   # of Cars   2 | |

| IMPROVEMENTS | | | | | |
|---|---|---|---|---|---|
| Attic | ☐ None | ☒ FWA ☐ HWBB ☐ Radiant | Fireplace(s) # ☐ Woodstove(s) # | Driveway Surface CONCRETE | |
| ☐ Drop Stair ☐ Stairs | | ☐ Other   Fuel | ☒ Patio/Deck COV ☒ Fence | ☒ Garage   # of Cars   4 | |
| ☐ Floor ☒ Scuttle | | Cooling ☐ Central Air Conditioning | ☐ Pool ☒ Porch COVER | ☐ Carport   # of Cars | |
| ☐ Finished ☐ Heated | | ☐ Individual ☐ Other | ☐ Other | ☒ Att. ☐ Det. ☐ Built-in | |

# of Appliances ☐ Refrigerator 2 ☐ Range/Oven 2 ☐ Dishwasher ☐ Disposal 2 ☐ Microwave 2 ☐ Washer/Dryer   Other (describe)

| Unit # 1 contains: | 3 Rooms | 2 Bedrooms | 1 Bath(s) | 798 Square Feet of Gross Living Area |
|---|---|---|---|---|
| Unit # 2 contains: | 3 Rooms | 2 Bedrooms | 1 Bath(s) | 884 Square Feet of Gross Living Area |
| Unit # 3 contains: | Rooms | Bedrooms | Bath(s) | Square Feet of Gross Living Area |
| Unit # 4 contains: | Rooms | Bedrooms | Bath(s) | Square Feet of Gross Living Area |

Additional features (special energy efficient items, etc.).   COVERED PORCH, COMPOSITE KITCHEN COUNTERTOPS, BUILT IN KITCHEN APPLIANCES,
CONCRETE DRIVE WAY. CARPET IN THE BEDROOMS, TILE IN LIVING ROOM, KITCHEN AND BATHROOM.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).   THE SUBJECT PROPERTY IS ADEQUATELY
MAINTAINED AND NO SIGNIFICANT ITEMS WERE OBSERVED THAT REQUIRE IMMEDIATE REPAIR. THE INTERIOR CONDITION AND
QUALITY OF CONSTRUCTION ARE TYPICAL FOR THE AREA. PHYSICAL DEPRECIATION IS DUE TO AGE. NO MAJOR REPAIR NEEDS
NOTED.

Form 1025 — *WinTOTAL* appraisal software by a la mode, inc. — 1-800-ALAMODE

## Small Residential Income Property Appraisal Report
File # 0901002

| | |
|---|---|
| Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? | ☐ Yes ☒ No If Yes, describe. |

| | |
|---|---|
| Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? | ☒ Yes ☐ No If No, describe. |

| | |
|---|---|
| Is the property subject to rent control? | ☒ Yes ☐ No If Yes, describe |

The following properties represent the most current, similar, and proximate comparable rental properties to the subject property. This analysis is intended to support the opinion of the market rent for the subject property.

| FEATURE | SUBJECT | COMPARABLE RENTAL # 1 | COMPARABLE RENTAL # 2 | COMPARABLE RENTAL # 3 |
|---|---|---|---|---|
| Address | 1308, 1310 W 218TH STREET TORRANCE, CA 90501 | 1607 DEL AMO BLVD APN# 7351-004-013 | 1549 W 204TH STREET APN# 7351-016-004 | 22015 HALLDALE AVE APN# 7346-013-030 |
| Proximity to Subject | | 1.21 miles NW | 1.10 miles N | 0.20 miles SW |
| Current Monthly Rent | $ | $ 2,650 | $ 2,550 | $ 2,300 |
| Rent/Gross Bldg. Area | $ sq.ft. | $ 1.43 sq.ft. | $ 1.47 sq.ft. | $ 1.41 sq.ft. |
| Rent Control | ☒ Yes ☐ No | ☐ Yes ☒ No | ☐ Yes ☒ No | ☒ Yes ☐ No |
| Data Source(s) | INSPECTION | PUBLIC RECORDS, FIELD SURV | PUBLIC RECORDS, FIELD SURV | PUBLIC RECORDS, FIELD SURV |
| Date of Lease(s) | N/A | N/A | N/A | N/A |
| Location | AVERAGE | NEAR RAILWAY | AVERAGE | AVERAGE |
| Actual Age | 48(1961) | 65(1944) | 65(1944) | 53(1956) |
| Condition | AVERAGE | AVERAGE | AVERAGE | AVERAGE |
| Gross Building Area | 1,682 | 1,848 | 1,739 | 1,627 |

| Unit Breakdown | Rm Count Tot Br Ba | Size Sq. Ft. | Rm Count Tot Br Ba | Size Sq. Ft. | Monthly Rent | Rm Count Tot Br Ba | Size Sq. Ft. | Monthly Rent | Rm Count Tot Br Ba | Size Sq. Ft. | Monthly Rent | Rm Count Tot Br Ba | Size Sq. Ft. | Monthly Rent |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Unit # 1 | | 1,682 | 3 2 1 | 798 | 848 | 2 1 1 | 1,848 | 2,650 | 4 3 1 | 900 | 1,350 | 3 2 1 | 800 | 1,100 |
| Unit # 2 | | | 3 2 1 | 884 | 1,250 | 4 2 2 | 1,000 | 1,400 | 4 3 1 | 839 | 1,200 | 3 2 1 | 827 | 1,200 |
| Unit # 3 | | | | | | | | $ | | | $ | | | $ |
| Unit # 4 | | | | | | | | $ | | | $ | | | $ |
| Utilities Included | | | WATER/TRASH UNFURNISHED | | | WATER/TRASH UNFURNISHED | | | WATER/TRASH UNFURNISHED | | | WATER/TRASH UNFURNISHED | | |

Analysis of rental data and support for estimated market rents for the individual subject units reported below (including the adequacy of the comparables, rental concessions, etc.)   ALL COMPARABLES ARE LOCATED WITHIN THE SUBJECT NEIGHBORHOOD. THE RENTAL PROPERTIES PROVIDE ADEQUATE SUPPORT FOR RENTS OF THE SUBJECT AND CONFIRM THE LOW VACANCY RATE IN THE NEIGHBORHOOD.

**Rent Schedule:** The appraiser must reconcile the applicable indicated monthly market rents to provide an opinion of the market rent for each unit in the subject property.

| | Leases | | Actual Rents | | | Opinion of Market Rent | | |
|---|---|---|---|---|---|---|---|---|
| | Lease Date | | Per Unit | | Total Rents | Per Unit | | Total Rents |
| Unit # | Begin Date | End Date | Unfurnished | Furnished | | Unfurnished | Furnished | |
| 1 | OWNER | OWNER | $ 0 | $ | $ 0 | $ 1,150 | $ | $ 1,150 |
| 2 | OWNER | OWNER | | | 0 | 1,250 | | 1,250 |
| 3 | | | | | | | | |
| 4 | | | | | | | | |

| | | | |
|---|---|---|---|
| Comment on lease data | Total Actual Monthly Rent | $ 0 | Total Gross Monthly Rent $ 2,400 |
| | Other Monthly Income (itemize) | $ | Other Monthly Income (itemize) $ |
| | Total Actual Monthly Income | $ | Total Estimated Monthly Income $ 2,400 |

Utilities included in estimated rents ☐ Electric ☐ Gas ☐ Oil ☒ Water ☒ Sewer ☒ Trash collection ☐ Cable ☐ Other
Comments on actual or estimated rents and other monthly income (including personal property)   THE TOTAL GROSS MONTHLY ESTIMATED RENT $1.43/S.F. REPORTED IS BASED ON THE TOTAL ACTUAL RENT OF THE SUBJECT PROPERTY. THE COMPARABLE RENTAL PROPERTIES PROVIDE SUPPORT FOR THE MONTHLY ESTIMATED RENT FOR THE SUBJECT PROPERTY.

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☒ did ☐ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)   DATAQUICK, MLS, NDC, OWNER
My research ☒ did ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)   DATAQUICK, MLS, NDC
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 03/28/2006 | 03/25/2008 | NO PRIOR SALE IN THE | NO PRIOR SALE IN THE |
| Price of Prior Sale/Transfer | $620,000 | $430,604 | PAST 1 YEAR | PAST 1 YEAR |
| Data Source(s) | DOC# 655238 | DOC# 508324 | NDCDATA | NDCDATA |
| Effective Date of Data Source(s) | DEC 2008 | DEC 2008 | DEC 2008 | DEC 2008 |

Analysis of prior sale or transfer history of the subject property and comparable sales   THE SUBJECT PROPERTY HAS ONE TRANSACTION ON 03/28/2006 FOR $620,000, DOC# 655238, DURING THE PAST 3 YEARS.  COMP# 1 HAS ONE TRANSACTION ON 03/25/2008 FOR $430,604, DOC# 508324, DURING PAST 1 YEAR.

Form 1025 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Small Residential Income Property Appraisal Report        File # 0901002

There are **25** comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 295,000 to $ 565,000.

There are **30** comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 283,000 to $ 552,000.

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | +(−) Adjustment | COMPARABLE SALE # 2 | +(−) Adjustment | COMPARABLE SALE # 3 | +(−) Adjustment |
|---|---|---|---|---|---|---|---|
| Address | 1308, 1310 W 218TH STREET TORRANCE, CA 90501 | 20624 CATALINA STREET APN# 7350-005-019 | | 20500 KENWOOD AVE APN# 7350-013-038 | | 1640 W 204TH STREET APN# 7351-006-004 | |
| Proximity to Subject | | 0.97 miles NE | | 0.99 miles N | | 1.15 miles NW | |
| Sale Price | $ N/A | $ 325,000 | | $ 337,500 | | $ 352,750 | |
| Sale Price/Gross Bldg. Area | $ sq.ft. | $ 185.19 sq.ft. | | $ 210.28 sq.ft. | | $ 213.79 sq.ft. | |
| Gross Monthly Rent | $ 2,400 | $ 2,500 | | $ 2,300 | | $ 2,500 | |
| Gross Rent Multiplier | | 130.00 | | 146.74 | | 141.10 | |
| Price per Unit | $ | $ 162,500 | | $ 168,750 | | $ 176,375 | |
| Price per Room | $ | $ 46,429 | | $ 56,250 | | $ 70,550 | |
| Price per Bedroom | $ | $ 81,250 | | $ 84,375 | | $ 117,583 | |
| Rent Control | ☒ Yes ☐ No | ☐ Yes ☒ No | | ☐ Yes ☒ No | | ☒ Yes ☐ No | |
| Data Source(s) | | DATAQUICK, MLS, NDC | | DATAQUICK, MLS, NDC | | DATAQUICK, MLS, NDC | |
| Verification Source(s) | | DOC# 2001468 | | DOC# 1672237 | | DOC# 1944057 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(−) Adjustment | DESCRIPTION | +(−) Adjustment | DESCRIPTION | +(−) Adjustment |
| Sale or Financing Concessions | | $0 1ST CONV | | $0 1ST CONV | | $0 1ST CONV | |
| Date of Sale/Time | | 11/13/2008 | | 09/17/2008 | | 11/03/2008 | |
| Location | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 9,000 | 6,300 SF | +2,500 | 8,050 SF | +1,000 | 7,013 SF | +2,000 |
| View | NONE | NONE | | NONE | | NONE | |
| Design (Style) | CONV/AVG | CONV/AVG | | CONV/AVG | | CONV/AVG | |
| Quality of Construction | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Actual Age | 48(1961) | 58(1951) | | 59(1950) | | 65(1944) | |
| Condition | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Gross Building Area | 1,682 | 1,755 | -2,000 | 1,605 | +2,500 | 1,650 | |

| Unit Breakdown | Total Bdrms Baths | Total Bdrms Baths | +(−) Adj | Total Bdrms Baths | +(−) Adj | Total Bdrms Baths | +(−) Adj |
|---|---|---|---|---|---|---|---|
| Unit # 1 | 3  2  1 | 3  2  1 | | 3  2  1 | | 2  1  1 | +3,000 |
| Unit # 2 | 3  2  1 | 4  2  2 | -3,000 | 3  2  1 | | 3  2  1 | |
| Unit # 3 | | | | | | | |
| Unit # 4 | | | | | | | |
| Basement Description | NONE | NONE | | NONE | | NONE | |
| Basement Finished Rooms | NONE | NONE | | NONE | | NONE | |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | WALL/NONE | WALL/NONE | | WALL/NONE | | WALL/NONE | |
| Energy Efficient Items | NONE NOTED | NONE NOTED | | NONE NOTED | | NONE NONTED | |
| Parking On/Off Site | 4 GARAGE | 4 GARAGE | | NONE | +8,000 | 4 GARAGE | |
| Porch/Patio/Deck | PATIO / PORCH | PATIO / PORCH | | PATIO / PORCH | | PATIO / PORCH | |
| FIREPLACE | NONE | NONE | | NONE | | NONE | |
| POOL | NONE | NONE | | NONE | | NONE | |
| MLS LISTED IN 6 MONTHS | | MLS# S08116160 | | MLS# 09002335 | | | |
| Net Adjustment (Total) | | ☐+ ☒− | $ -2,500 | ☒+ ☐− | $ 11,500 | ☒+ ☐− | $ 5,000 |
| Adjusted Sale Price of Comparables | | Net Adj. 0.8 % Gross Adj. 2.3 % | $ 322,500 | Net Adj. 3.4 % Gross Adj. 3.4 % | $ 349,000 | Net Adj. 1.4 % Gross Adj. 1.4 % | $ 357,750 |
| Adjusted Price Per Unit (Adj. SP Comp./ # of Comp Units) | | $ 161,250 | | $ 174,500 | | $ 178,875 | |
| Adjusted Price Per Room (Adj. SP Comp./ # of Comp Rooms) | | $ 46,071 | | $ 58,167 | | $ 71,550 | |
| Adjusted Price Per Bedrm (Adj. SP Comp./ # of Comp Bedrooms) | | $ 80,625 | | $ 87,250 | | $ 119,250 | |

| Value per Unit | $ 171,541 X 2 Units = $ 343,082 | Value per GBA $ 206.00 X 1,682 GBA = $ 346,492 |
|---|---|---|
| Value per Room | $ 58,596 X 6 Rooms = $ 351,576 | Value per Bdrms. $ 95,708 X 4 Bdrms. = $ 382,832 |

Summary of Sales Comparison Approach including reconciliation of the above indicators of value. LIMITED SIMILAR PROPERTY CLOSED SALES IN THE SUBJECT NEIGHBORHOOD AREA WITHIN 6 MONTHS. ALL COMPS ARE LOCTED IN THE SUBJECT NEIGHBORHOOD AND SIMILAR IN CONSTRUCTION, QUALITY, APPEAL, THEY ARE CLOSED AND RECORDED. ALL COMPS ARE INFERIOR IN THEIR LOT SIZE, COMP#1 IS SUPERIOR IN ITS LIVING AREA, COMP# 2 IS INFERIOR IN ITS LIVING AREA, COMP# 3 HAS NO GARAGE. BUT THEY HAVE BEEN ADJUSTED ACCORDINGLY. DOLLAR ADJUSTMENT: $1/SQFT FOR LOT SIZE, $3,000/BEDROOM, $4,000/BATHROOM, $30/SQFT FOR GROSS LIVING AREA (GLA), $2,000/GARAGE. THESE ARE THE BEST AVAILABLE SALES IN SUBJECT AREA AT TIME OF INSPECTION. ALL SALES GIVEN EQUAL WEIGHTS.

Indicated Value by Sales Comparison Approach $ 330,000

Total gross monthly rent $ 2,400 X gross rent multiplier (GRM) 137.50 = $ 330,000    Indicated value by the Income Approach

Comments on income approach including reconciliation of the GRM   THE SUBJECT EXPENSE REPORTS ARE UNAVAILABLE TO THIS APPRAISAL. GROSS MULTIPLIER RANGES FROM 130 TO 146.

Indicated Value by: Sales Comparison Approach $ 330,000   Income Approach $ 330,000   Cost Approach (if developed) $ 329,676

THE MARKET APPROACH IS CONSIDERED TO BE THE MOST RELIABLE INDICATOR OF VALUE. IT IS REASONABLY SUPPORTED BY THE INCOME APPROACH AND THE COST APPROACH. THE ESTIMATE REMAINING ECONOMIC LIFE OF THE SUBJECT PROPERTY IS 56 YEARS.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: NO OTHER CONDITION OR CONTINGENCIES ARE NOTED THIS APPRAISAL WAS DONE AS A COMPLETE APPRAISAL SUMMARY REPORT.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 330,000 , as of 01/09/2009 , which is the date of inspection and the effective date of this appraisal.

## Small Residential Income Property Appraisal Report
File # 0901002

**ADDITIONAL COMMENTS**

THE SUBJECT ELECTRICAL, MOLD CONDITION, ROOF AND FOUNDATION WERE NOT INSPECTED AND THE APPRAISER OFFERS NO OPINION OF THE CONDITION OF THESE. THIS APPRAISER IS NOT EXPERT IN THESE FIELDS. IT IS RECOMMENDED THAT A PROFESSIONAL LICENSED DETAILED HOME INSPECTION BE DONE TO DETERMINE THE CONDITION OF THE ABOVE MENTIONED ITEMS.

THIS APPRAISAL REPORT HAS BEEN SIGNED ELECTRONICALLY AND IS CERTIFIED AS A LIVE SIGNATURE. THIS REPORT IS FOR CONVENTIONAL LOANS ONLY.

SUBJECT LEGAL DESCRIPTION, LEGAL USE, LOT SIZE, DETAILS, ZONING, FLOOD INFORMATION WAS OBTAINED FROM PUBLIC RECORDS AND AREA ASSUMED TO BE ACCURATE BUT NOT GUARANTEED. APPRAISER ASSUME NO RESPONSIBILITY REGARDING THESE ABOVE MENTIONED ITEMS OF THE SUBJECT PROPERTY.

POSSESSION OF THIS REPORT OR COPY THEREOF DOES NOT CARRY WITHIN THE RIGHT OF PUBLICATION IT MAY NOT BE USED FOR ANY OTHER PURPOSE BY ANY PERSON OTHER THAN THE PARTY TO WHOM IT IS ADDRESSED WITHOUT WRITTEN CONSENT FROM THE APPRAISER AND IN ANY EVENT ONLY WITH THE PROPER WRITTEN QUALIFICATION AND ONLY IN ITS ENTIRETY.

IT IS ASSUMED THAT THERE ARE NO STRUCTURAL DEFECTS HIDDEN BY FLOOR OR WALL COVERINGS OR ANY OTHER HIDDEN OR UNAPPARENT CONDITIONS OF THE PROPERTY THAT ALL MECHANICAL EQUIPMENT AND APPLIANCES ARE IN GOOD TO AVERAGE WORKING CONDITION AND THAT ALL ELECTRICAL COMPONENTS AND THE ROOFING ARE IN GOOD TO AVERAGE CONDITION. IF THE CLIENT HAS ANY QUESTIONS REGARDING THESE ITEMS. IT IS THE CLIENTS RESPONSIBILITY. TO ORDER THE APPRORIATE INSPECTIONS. THE APPRAISER DOES NOT HAVE THE SKILL OR EXPERTISE TO MAKE SUCH INSPECTIONS. THE APPRAISER ASSUMES NO RESPONSIBILITY FOR THESE ITEMS. THIS APPRAISAL REPORT IS INCOMPLETE WITHOUT THIS ADDENDUM.

APPRAISER DID NOT VERIFY PERMITS, ZONING, CONFORMITY OF SUBJ, INCLUDING BUT NOT LIMITED TO PATIO AND OTHER STRUCTURE ATTACHED OR NOT ATTACHED TO SUB.

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.
Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)

**COST APPROACH**

| | | | |
|---|---|---|---|
| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE | =$ | 175,000 |
| Source of cost data  LOCAL CONTRACTORS & RESIDENTIAL BUILDER | DWELLING     1,682 Sq.Ft. @ $ 110.00 | =$ | 185,020 |
| Quality rating from cost service  AVG      Effective date of cost data  DEC 2008 | N/A Sq.Ft. @ $ | =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | =$ | |
| SITE IMPROVEMENTS ARE INCLUDING LANDSCAPING, DRIVEWAY, | Garage/Carport     722 Sq.Ft. @ $ 30.00 | =$ | 21,660 |
| WALKWAY, AND FENCE. ACCRUED DEPRECIATION IS BASED ON | Total Estimate of Cost-New | =$ | 206,680 |
| 24 YEARS DEPRECIATED VALUE OVER 80 YEARS OF THE | Less     Physical     Functional     External | | |
| SUBJECT PHYSICAL CONDITION.  LAND TO VALUE RATIO IS | Depreciation     62,004 | =$( | 62,004) |
| TYPICAL IN THE AREA.  DATA REFERENCE:  MARSHALL & SWIFT | Depreciated Cost of Improvements | =$ | 144,676 |
| COST HANDBOOK. | *As-Is* Value of Site Improvements | =$ | 10,000 |
| Estimated Remaining Economic Life (HUD and VA only)     56 Years | INDICATED VALUE BY COST APPROACH | =$ | 329,676 |

### PROJECT INFORMATION FOR PUDs (if applicable)

**PUD INFORMATION**

Is the developer/builder in control of the Homeowners' Association (HOA)?  ☐ Yes  ☐ No    Unit type(s)  ☐ Detached  ☐ Attached
Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.
Legal Name of Project
Total number of phases                 Total number of units                     Total number of units sold
Total number of units rented           Total number of units for sale           Data source(s)
Was the project created by the conversion of existing building(s) into a PUD?  ☐ Yes    ☐ No  If Yes, date of conversion.
Does the project contain any multi-dwelling units?  ☐ Yes  ☐ No  Data Source
Are the units, common elements, and recreation facilities complete?  ☐ Yes    ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?  ☐ Yes   ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Form 1025 — *WinTOTAL* appraisal software by a la mode, inc. — 1-800-ALAMODE

## Small Residential Income Property Appraisal Report

File # 0901002

This report form is designed to report an appraisal of a two- to four-unit property, including a two- to four-unit property in a planned unit development (PUD). A two- to four-unit property located in either a condominium or cooperative project requires the appraiser to inspect the project and complete the project information section of the Individual Condominium Unit Appraisal Report or the Individual Cooperative Interest Appraisal Report and attach it as an addendum to this report.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements, including each of the units. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Freddie Mac Form 72 March 2005                     Page 5 of 7                     Fannie Mae Form 1025 March 2005

**Small Residential Income Property Appraisal Report**   File # 0901002

**APPRAISER'S CERTIFICATION:**   The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property, including all units. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison and income approaches to value. I have adequate market data to develop reliable sales comparison and income approaches to value for this appraisal assignment. I further certify that I considered the cost approach to value but did not develop it, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

**Small Residential Income Property Appraisal Report**   File # 0901002

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:**   The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name PAUL H LIU, ASA | Name |
| Company Name Appraisal Express | Company Name |
| Company Address 333 W. Garvey Ave, #844 | Company Address |
| Monterey Park, Ca 91754 | |
| Telephone Number 626-404-7633 | Telephone Number |
| Email Address aexpress18@yahoo.com | Email Address |
| Date of Signature and Report 01/10/2009 | Date of Signature |
| Effective Date of Appraisal 01/09/2009 | State Certification # |
| State Certification # | or State License # |
| or State License # AR-034000 | State |
| or Other (describe) ____ State # | Expiration Date of Certification or License |
| State CA | |
| Expiration Date of Certification or License 05-11-2010 | SUBJECT PROPERTY |

ADDRESS OF PROPERTY APPRAISED
1308, 1310 W 218TH STREET
TORRANCE, CA 90501

APPRAISED VALUE OF SUBJECT PROPERTY $   330,000

☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
     Date of Inspection
☐ Did inspect interior and exterior of subject property
     Date of Inspection

LENDER/CLIENT
Name
Company Name SPECIALTY LOANS
Company Address 2465 W. WHITTIER BLVD, #203,
MONTEBELLO, CA 90640
Email Address

COMPARABLE SALES

☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
     Date of Inspection

File No. 0901002 Page #9

## Supplemental Addendum

File No. 0901002

| | |
|---|---|
| Borrower/Client | SALAZAR, TEODORA |
| Property Address | 1308, 1310 W 218TH STREET |
| City | TORRANCE    County LOS ANGELES    State CA    Zip Code 90501 |
| Lender | SPECIALTY LOANS |

ADDITIONAL LIMITING CONDITIONS:  THE APPRAISER IS NOT A LAND SURVEYOR AND IS ASSUMING THAT THERE ARE NOT ADVERSE EASEMENTS OR ENCROACHMENTS AFFECTING THE MARKETABILITY OF THE SUBJECT PROPERTY.  A LAND SURVEY AND/OR TITLE REPORT WAS NOT REVIEWED.  IF INFORMATION IS DISCOVERED THAT WOULD ADVERSELY AFFECT THE SUBJECT PROPERTY, THE APPRAISER RESERVES THE RIGHT TO CHANGE THE VALUE OPINION ACCORDINGLY.  ALL OF THE AFOREMENTIONED WAS CONSIDERED IN THE VALUE OPINION.  FURTHER THE APPRAISER IS NEITHER A HOME INSPECTOR NOR AN ENVIRONMENTAL INSPECTOR.  THIS APPRAISAL IS NOT INTENDED TO BE, AND SHOULD NOT BE CONSTRUED TO BE AN EXPRESSION OR OPINION THAT REPRESENTS, ENSURES, OR GUARANTEES IN ANY MANNER OR TO ANY EXTENT THAT THE PROPERTY IS FREE OF DEFECTS, MOLD AND/OR OTHER ADVERSE ENVIRONMENTAL PROBLEMS.  A PROFESSIONAL HOME INSPECTION AND/OR PROFESSIONAL ENVIRONMENTAL ASSESSMENT IS RECOMMENDED IF FURTHER INFORMATION IS NEEDED.  THE APPRAISAL IS UNDER THE ASSUMPTION THAT THERE ARE NO HEALTH AND SAFETY ISSUES.

PURPOSE AND FUNCTION OF THE APPRAISAL:  THE PURPOSE OF THE APPRAISAL IS TO ESTIMATE THE MARKET VALUE OF THE SUBJECT PROPERTY AS DEFINED HEREIN..  THE FUNCTION OF THE APPRAISAL IS TO ASSIST THE ABOVE NAMED CLIENT IN EVALUATING THE SUBJECT FOR A REAL ESTATE LOAN.

INTENDED USE OF THE REPORT: THIS SUMMARY APPRAISAL REPORT IS INTENDED FOR USE BY THE CLIENT ONLY.  THE CLIENT IS IDENTIFIED IN THE APPRAISAL REPORT.  THIS REPORT IS NOT INTENDED FOR ANY OTHER USE OR USER.  IF THE BORROWER OR THIR PARTY RECEIVES A COPY OF THIS REPORT FROM THE LENDER/CLIENT, IT DOES NOT MEAN THAT THE BORROWER IS AN INTENDED USER OF THIS REPORT.  THEREFORE THE APPRAISER IS NOT OPEN FOR DISCUSSION OR COMMENTS OF THIS REPORT TO ANYONE OTHER THAN THE CLIENT.

IN THIS APPRAISAL ASSIGNMENT, ONLY THE SALES COMPARISON APPROACH WAS UTILIZED.  IN THE SALES COMPARISON APPROACH, COMPARABLES SALES ARE SELECTED WHICH BEST REPRESENT THE SUBJECT PROPERTY CONCERNING LOCATION, SIZE, AGE, QUALITY, CONDITION, DESIGN AND APPEAL.  AN ATTEMPT IS FIRST MADE TO LOCATED THE MOST RECENTLY CLOSED SALES WITHIN THE SUBJECT'S NEIGHBORHOOD.  HOWEVER, SINCE THIS IS NOT ALWAYS POSSIBLE, AT TIMES IT IS NECESSARY TO EXPAND THE SEARCH PARAMETERS, AND MAKE ADJUSTMENTS SUPPORTED FROM MARKET DATA.  THE COMPARABLE SALES SELECTED WERE DEEMED TO BE THE MOST REPRESENTATIVE OF THE SUBJECT AS THE DATE OF THE APPRAISAL.  THESE PROPERTIES WERE COMPARED TO THE SUBJECT AND ADJUSTED FOR DIFFERENCES TO ARRIVE AT AN INDICATED RANGE OF VALUE.  EXTERIOR INSPECTIONS WERE MADE TO THE COMPARABLES, WITH INFORMATION OBTAINED THROUGH DATA RESOURCES SUCH AS REALQUEST, MLS, AND NATIONAL DATA COLLECTIVE.

## Operating Income Statement
### One- to Four-Family Investment Property and Two- to Four-Family Owner-Occupied Property

Property Address

| | | | | |
|---|---|---|---|---|
| 1308, 1310 W 218TH STREET | | TORRANCE | CA | 90501 |
| Street | | City | State | Zip Code |

**General Instructions:** This form is to be prepared jointly by the loan applicant, the appraiser, and the lender's underwriter. The applicant must complete the following schedule indicating each unit's rental status, lease expiration date, current rent, market rent, and the responsibility for utility expenses. Rental figures must be based on the rent for an "unfurnished" unit.

| | Currently Rented | Expiration Date | Current Rent Per Month | Market Rent Per Month | Utility Expense | Paid By Owner | Paid By Tenant |
|---|---|---|---|---|---|---|---|
| Unit No. 1 | Yes ☐ No ☒ | | $ 0 | $ 1,150 | Electricity | ☐ | ☒ |
| Unit No. 2 | Yes ☐ No ☒ | | $ 0 | $ 1,250 | Gas | ☐ | ☒ |
| Unit No. 3 | Yes ☐ No ☐ | | $ | $ | Fuel Oil | ☐ | ☐ |
| Unit No. 4 | Yes ☐ No ☐ | | $ | $ | Fuel (Other) | ☐ | ☐ |
| Total | | | $ | $ 2,400 | Water/Sewer | ☒ | ☐ |
| | | | | | Trash Removal | ☒ | ☐ |

The applicant should complete all of the income and expense projections and for existing properties provide actual year-end operating statements for the past two years *(for new properties the applicant's projected income and expenses must be provided)*. This Operating Income Statement and any previous operating statements the applicant provides must then be sent to the appraiser for review, comment, and/or adjustments next to the applicant's figures *(e.g. Applicant/Appraiser 288/300)*. If the appraiser is retained to complete the form instead of the applicant, the lender must provide to the appraiser the aforementioned operating statements, mortgage insurance premium, HOA dues, leasehold payments, subordinate financing, and/or any other relevant information as to the income and expenses of the subject property received from the applicant to substantiate the projections. The underwriter should carefully review the applicant's/appraiser's projections and the appraiser's comments concerning those projections. The underwriter should make any final adjustments that are necessary to more accurately reflect any income or expense items that appear unreasonable for the market. *(Real estate taxes and insurance on these types of properties are included in PITI and not calculated as an annual expense item)* Income should be based on the current rents, but should not exceed market rents. When there are no current rents because the property is proposed, new, or currently vacant, market rents should be used.

### Annual Income and Expense Projection for Next 12 months

| Income *(Do not include income for owner-occupied units)* | | By Applicant/Appraiser | | Adjustments by Lender's Underwriter | |
|---|---|---|---|---|---|
| Gross Annual Rental *(from unit(s) to be rented)* ..................(Market) | $ | 28,800 | $ | | |
| Other Income *(include sources)* ......................................... | + | | + | | |
| Total ........................................................................... | $ | 28,800 | $ | | |
| Less Vacancy/Rent Loss ................................................... | – | 1,152 ( 4 %) | – | ( %) | |
| Effective Gross Income ..................................................... | $ | 27,648 | $ | | |

**Expenses** *(Do not include expenses for owner-occupied units)*

| | | |
|---|---|---|
| Electricity .......................................................................... | | |
| Gas ................................................................................. | | |
| Fuel Oil ............................................................................ | | |
| Fuel ...................................................... (Type - _____ ) | | |
| Water/Sewer ...................................................................... | 1,200 | |
| Trash Removal ................................................................... | 300 | |
| Pest Control ...................................................................... | | |
| Other Taxes or Licenses ..................................................... | | |
| Casual Labor ..................................................................... | 300 | |
| This includes the costs for public area cleaning, snow removal, etc., even though the applicant may not elect to contract for such services. | | |
| Interior Paint/Decorating ..................................................... | 200 | |
| This includes the costs of contract labor and materials that are required to maintain the interiors of the living unit. | | |
| General Repairs/Maintenance .............................................. | 200 | |
| This includes the costs of contract labor and materials that are required to maintain the public corridors, stairways, roofs, mechanical systems, grounds, etc. | | |
| Management Expenses ....................................................... | | |
| These are the customer expenses that a professional management company would charge to manage the property. | | |
| Supplies ........................................................................... | 200 | |
| This includes the costs of items like light bulbs, janitorial supplies, etc. | | |
| Total Replacement Reserves - See Schedule on Pg. 2 ............... | 1,005 | |
| Miscellaneous ................................................................... | | |
| ....................................................................................... | | |
| ....................................................................................... | | |
| ....................................................................................... | | |
| ....................................................................................... | | |
| ....................................................................................... | | |
| ....................................................................................... | | |
| ....................................................................................... | | |
| **Total Operating Expenses** .................................................. | $ 3,405 | $ |

| | | |
|---|---|---|
| Freddie Mac | **This Form Must Be Reproduced By Seller** | Fannie Mae |
| Form 998 Aug 88 | Page 1 of 2 | Form 216 Aug 88 |

Appraisal Express (626)300-9759
Form INC2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

**Replacement Reserve Schedule**

Adequate replacement reserves must be calculated regardless of whether actual reserves are provided for on the owner's operating statements or are customary in the local market. This represents the total average yearly reserves. Generally, all equipment and components that have a remaining life of more than one year - such as refrigerators, stoves, clothes washers/dryers, trash compactors, furnaces, roofs, and carpeting, etc. - should be expensed on a replacement cost basis.

| Equipment | Replacement Cost | | Remaining Life | | | | By Applicant/ Appraiser | Lender Adjustments |
|---|---|---|---|---|---|---|---|---|
| Stoves/Ranges .......... @ | $ 300 | ea. ÷ | 10 Yrs. x | 2 | Units = $ | | 60 | $ |
| Refrigerators ............. @ | $ | ea. ÷ | Yrs. x | | Units = $ | | | $ |
| Dishwashers ............. @ | $ | ea. ÷ | Yrs. x | | Units = $ | | | $ |
| A/C Units ................. @ | $ | ea. ÷ | Yrs. x | | Units = $ | | | $ |
| C. Washer/Dryers ....... @ | $ | ea. ÷ | Yrs. x | | Units = $ | | | $ |
| HW Heaters .............. @ | $ 350 | ea. ÷ | 10 Yrs. x | 2 | Units = $ | | 70 | $ |
| Furnace(s) ............... @ | $ 450 | ea. ÷ | 10 Yrs. x | 2 | Units = $ | | 90 | $ |
| (Other) .................... @ | $ | ea. ÷ | Yrs. x | | Units = $ | | | $ |
| Roof ....................... @ | $ 3,364 | ÷ | 10 Yrs. x One Bldg. = | | | $ | 336 | $ |

**Carpeting** (Wall to Wall)

|  |  |  |  | Remaining Life |  |  |  |  |
|---|---|---|---|---|---|---|---|---|
| (Units) | 187 Total Sq. Yds. @ $ | 12 Per Sq. Yd. ÷ | 5 Yrs. = | | | $ | 449 | $ |
| (Public Areas) | Total Sq. Yds. @ $ | Per Sq. Yd. ÷ | Yrs. = | | | $ | | $ |

**Total Replacement Reserves. (Enter on Pg. 1)**                           $  1,005    $

**Operating Income Reconciliation**

$ 27,648      −   $ 3,405      =  $ 24,243      ÷ 12 =  $ 2,020
Effective Gross Income        Total Operating Expenses        Operating Income              Monthly Operating Income

$ $ 2,020      −   $ 0      =  $ 2,020
Monthly Operating Income        Monthly Housing Expense        Net Cash Flow

(Note: Monthly Housing Expense includes principal and interest on the mortgage, hazard insurance premiums, real estate taxes, mortgage insurance premiums, HOA dues, leasehold payments, and subordinate financing payments.)

Underwriter's instructions for 2-4 Family Owner-Occupied Properties

- If Monthly Operating Income is a positive number, enter as "Net Rental Income" in the "Gross Monthly Income" section of Freddie Mac Form 65/Fannie Mae Form 1003. If Monthly Operating Income is a negative number, it must be included as a liability for qualification purposes.

- The borrower's monthly housing expense-to-income ratio must be calculated by comparing the total Monthly Housing Expense for the **subject property** to the borrower's stable monthly income.

Underwriter's instructions for 1-4 Family Investment Properties

- If Net Cash Flow is a positive number, enter as "Net Rental Income" in the "Gross Monthly Income" section of Freddie Mac Form 65/Fannie Mae Form 1003. If Net Cash Flow is a negative number, it must be included as a liability for qualification purposes.

- The borrower's monthly housing expense-to-income ratio must be calculated by comparing the total monthly housing expense for the borrower's **primary residence** to the borrower's stable monthly income.

Appraiser's Comments *(Including sources for data and rationale for the projections)*

PAUL H LIU, ASA                          01/10/2009
Appraiser Name              Appraiser Signature          Date

Underwriter's Comments and Rationale for Adjustments

Underwriter Name              Underwriter Signature          Date

Freddie Mac
Form 998 Aug 88                    Page 2 of 2                    Fannie Mae
                                                                  Form 216 Aug 88

Form INC2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

| Borrower/Client | SALAZAR, TEODORA | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1308, 1310 W 218TH STREET | | | | | |
| City | TORRANCE | County | LOS ANGELES | State | CA | Zip Code | 90501 |
| Lender | SPECIALTY LOANS | | | | | |



**Subject Front**

1308, 1310 W 218TH STREET
Sales Price        N/A
Gross Building Area    1,682
Age                48(1961)



**Subject Rear**



**Subject Street**

File No. 0901002 Page #13

Subject Photo Page

| Borrower/Client | SALAZAR, TEODORA | | | | |
|---|---|---|---|---|---|
| Property Address | 1308, 1310 W 218TH STREET | | | | |
| City | TORRANCE | County | LOS ANGELES | State CA | Zip Code 90501 |
| Lender | SPECIALTY LOANS | | | | |



**Subject Living Room**

1308, 1310 W 218TH STREET
Sales Price          N/A
Gross Building Area  1,682
Age                  48(1961)



**Subject kitchen**



**Subject Dining Area**

Form PICPIX.SC — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

Subject Photo Page

| Borrower/Client | SALAZAR, TEODORA | | | | |
|---|---|---|---|---|---|
| Property Address | 1308, 1310 W 218TH STREET | | | | |
| City | TORRANCE | County | LOS ANGELES | State CA | Zip Code 90501 |
| Lender | SPECIALTY LOANS | | | | |



**Subject Bedroom**

1308, 1310 W 218TH STREET
Sales Price        N/A
Gross Building Area  1,682
Age                48(1961)



**Subject Bedroom**



**Subject Bedroom**

File No. 0901002  Page #15

**Subject Photo Page**

| Borrower/Client | SALAZAR, TEODORA | | | | |
|---|---|---|---|---|---|
| Property Address | 1308, 1310 W 218TH STREET | | | | |
| City | TORRANCE | County | LOS ANGELES | State CA | Zip Code 90501 |
| Lender | SPECIALTY LOANS | | | | |



**Subject Bedroom**

1308, 1310 W 218TH STREET
Sales Price          N/A
Gross Building Area  1,682
Age                  48(1961)



**Subject Bathroom**



**Subject Bathroom**

Form PICPIX.SC — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. 0901002 Page #16

Comparable Photo Page

| Borrower/Client | SALAZAR, TEODORA | | | | |
|---|---|---|---|---|---|
| Property Address | 1308, 1310 W 218TH STREET | | | | |
| City | TORRANCE | County | LOS ANGELES | State CA | Zip Code 90501 |
| Lender | SPECIALTY LOANS | | | | |



**Comparable 1**

20624 CATALINA STREET
Sales Price          325,000
Gross Building Area  1,755
Age                  58(1951)



**Comparable 2**

20500 KENWOOD AVE
Sales Price          337,500
Gross Building Area  1,605
Age                  59(1950)



**Comparable 3**

1640 W 204TH STREET
Sales Price          352,750
Gross Building Area  1,650
Age                  65(1944)

File No. 0901002 Page #17

Rental Photo Page

| Borrower/Client | SALAZAR, TEODORA | | | | |
|---|---|---|---|---|---|
| Property Address | 1308, 1310 W 218TH STREET | | | | |
| City | TORRANCE | County LOS ANGELES | | State CA | Zip Code 90501 |
| Lender | SPECIALTY LOANS | | | | |



**Rental 1**
1607 DEL AMO BLVD
Proximity to Subject 1.21 miles NW
Gross Building Area 1,848
Age              65(1944)



**Rental 2**
1549 W 204TH STREET
Proximity to Subject 1.10 miles N
Gross Building Area 1,739
Age              65(1944)



**Rental 3**
22015 HALLDALE AVE
Proximity to Subject 0.20 miles SW
Gross Building Area 1,627
Age              53(1956)

| Borrower/Client | SALAZAR, TEODORA | | | | |
|---|---|---|---|---|---|
| Property Address | 1308, 1310 W 218TH STREET | | | | |
| City | TORRANCE | County | LOS ANGELES | State | CA | Zip Code 90501 |
| Lender | SPECIALTY LOANS | | | | |



File No. 0901002| Page #19

### Location Map

| | |
|---|---|
| Borrower/Client | SALAZAR, TEODORA |
| Property Address | 1308, 1310 W 218TH STREET |
| City | TORRANCE    County LOS ANGELES    State CA    Zip Code 90501 |
| Lender | SPECIALTY LOANS |



Form MAP.LOC — *WinTOTAL* appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. 0901002 Page #20

**Building Sketch**

| | |
|---|---|
| Borrower/Client | SALAZAR, TEODORA |
| Property Address | 1308, 1310 W 218TH STREET |
| City | TORRANCE |
| Lender | SPECIALTY LOANS |

County LOS ANGELES    State CA    Zip Code 90501



**Area Calculations Summary**

| Living Area | | Calculation Details | |
|---|---|---|---|
| UNIT-1 | 797.8 Sq ft | 22 × 18.3 = 402.6 | |
| | | 26 × 15.2 = 395.2 | |
| UNIT-2 | 884 Sq ft | 34 × 26 = 884 | |
| Total Living Area (Rounded): | 1682 Sq ft | | |
| Non-living Area | | | |
| 2 Car Attached | 361 Sq ft | 19 × 19 = 361 | |
| 2 Car Attached | 361 Sq ft | 19 × 19 = 361 | |



STATE OF CALIFORNIA

Business, Transportation & Housing Agency

# OFFICE OF REAL ESTATE APPRAISERS

## REAL ESTATE APPRAISER LICENSE

OREA APPRAISER IDENTIFICATION NUMBER    AR034000

### PAUL H. LIU

has successfully met the requirements for a license as a residential real estate appraiser in the State of California and is, therefore, entitled to use the title "Certified Residential Real Estate Appraiser".

This license has been issued in accordance with the provisions of the Real Estate Appraisers' Licensing and Certification Law.

OFFICE OF REAL ESTATE APPRAISERS

*Bob Clark*

Date Issued:  May 12, 2008
Date Expires: May 11, 2010

Audit No. 108398

# CERTIFICATE OF LIABILITY INSURANCE

| PRODUCER | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICES BELOW. |
|---|---|

PRODUCER
Linsin, Sherman Associates
Rafael North, Suite 250
185 North Redwood Drive
San Rafael, CA 94903

**COMPANIES AFFORDING COVERAGE**

| COMPANY A | Colony Insurance Company Richmond, VA |
|---|---|

INSURED
Paul H. Liu dba Premier Mortgage and Realty
3553 Barnes Ave.
Baldwin Park, CA 91706

| COMPANY B | |
|---|---|
| COMPANY C | |
| COMPANY D | |
| COMPANY E | |

## COVERAGES

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAME ABOVE FOR THE POLICY PERIOD INDICATED, NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES, LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| CO LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|
| | **GENERAL LIABILITY** | | | | | |
| | COMMERCIAL GENERAL LIABILITY | | | | GENERAL AGGREGATE | |
| | CLAIMS MADE | | | | PRODUCTS-COMP/OP AGG. | |
| | OCCUR. | | | | PERSONAL & ADV. INJURY | |
| | OWNER'S & CONTRACTOR'S | | | | EACH OCCURRENCE | |
| | PROT. | | | | FIRE DAMAGE (Any one fire) | |
| | | | | | MED. EXPENSE (Any one person) | |
| | **AUTOMOBILE LIABILITY** | | | | COMBINED SINGLE LIMIT | |
| | ANY AUTO | | | | BODILY INJURY (Per person) | $ |
| | ALL OWNED AUTOS | | | | | |
| | SCHEDULED AUTOS | | | | BODILY INJURY (Per accident) | $ |
| | HIRED AUTOS | | | | | |
| | NON-OWNED AUTOS | | | | PROPERTY DAMAGE | $ |
| | GARAGE LIABILITY | | | | | |
| | **EXCESS LIABILITY** | | | | EACH OCCURRENCE | $ |
| | UMBRELLA FORM | | | | AGGREGATE | $ |
| | OTHER THAN UMBRELLA FORM | | | | | |
| | **WORKER'S COMPENSATION AND EMPLOYERS' LIABILITY** | | | | STATUTORY LIMITS | |
| | | | | | EACH ACCIDENT | $ |
| | | | | | DISEASE POLICY LIMIT | $ |
| | | | | | DISEASE-EACH EMPLOYEE | $ |
| | **OTHER** Real Estate Agents & Brokers Errors and Omissions Insurance | EO401736 | 7/11/08 | 7/11/09 | Each Claim Annual Aggregate | $1 Million $1 Million |

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/SPECIAL ITEMS

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| To Whom It May Concern | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING COMPANY WILL ENDEAVOR TO MAIL __10__ DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY UPON THE COMPANY, ITS AGENTS OR REPRESENTATIVES AUTHORIZED REPRESENTATIVE |

**EXHIBIT D**

L. Bishop Austin
Name L. BISHOP AUSTIN & ASSOCIATES

Address 3250 Wilshire Blvd.

Los Angeles, CA 90010

Telephone (213)388-4939    (FAX) (213)388-2411

Email Address _____
[ X ] Attorney for Debtor
State Bar No. SBN 175497

[    ] Debtor in Pro Se (Any reference to the singular shall include the plural in the case of joint debtors.)

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

| List all names (including trade names) used by the debtor within the last 8 years: ANA ELSA PEREZ | Chapter 13 Case No.: |
|---|---|
| | **CHAPTER 13 PLAN** |
| | **CREDITOR'S MEETING:**<br>Date:<br>Time:<br>Place: |
| | **CONFIRMATION HEARING:**<br>Date:<br>Time:<br>Place: |

### NOTICE

This Chapter 13 Plan is proposed by the above Debtor. The Debtor attests that the information stated in this Plan is accurate. Creditors cannot vote on this Plan. However, creditors may object to this Plan being confirmed pursuant to 11 U.S.C. §1324. Any objection must be in writing and must be filed with the court and served upon the Debtor, Debtor's attorney (if any), and the Chapter 13 Trustee not less than 8 days before the date set for the meeting of creditors. Unless an objection is filed and served, the court may confirm this Plan. The Plan, if confirmed, modifies the rights and duties of the Debtor and creditors to the treatment provided in the Plan as confirmed, with the following IMPORTANT EXCEPTIONS:

Unless otherwise provided by law, each creditor will retain its lien until the earlier of payment of the underlying debt determined under non-bankruptcy law or discharge under 11 U.S.C. §1328. If the case under this chapter is dismissed or converted without completion of the Plan, such lien shall also be retained by such holder to the extent recognized by applicable non-bankruptcy law.

Defaults will be cured using the interest rate set forth below in the Plan. Any ongoing obligation will be paid according to the terms of the Plan.

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised November 2006*

**F 3015-1.1**

F301511

Chapter 13 Plan (Rev. 11/06) - Page 2                                                    2006 USBC, Central District of California

**HOLDERS OF SECURED CLAIMS AND CLASS 1 CLAIMANTS WILL BE PAID ACCORDING TO THIS PLAN AFTER CONFIRMATION UNLESS THE SECURED CREDITOR OR CLASS 1 CLAIMANT FILES A PROOF OF CLAIM IN A DIFFERENT AMOUNT THAN THAT PROVIDED IN THE PLAN.** If a secured creditor or a class 1 creditor files a proof of claim, that creditor will be paid according to that creditor's proof of claim, unless the court orders otherwise.

**HOLDERS OF ALL OTHER CLAIMS MUST TIMELY FILE PROOFS OF CLAIMS, IF THE CODE SO REQUIRES, OR THEY WILL NOT BE PAID ANY AMOUNT.** A Debtor who confirms a Plan may be eligible thereafter to receive a discharge of debts to the extent specified in 11 U.S.C. § 1328.

The Debtor proposes the following Plan and makes the following declarations:

**I.  PROPERTY AND FUTURE EARNINGS OR INCOME SUBJECT TO THE SUPERVISION AND CONTROL OF THE CHAPTER 13 TRUSTEE**

The Debtor submits the following to the supervision and control of the Chapter 13 Trustee:

A.  Payments by Debtor of $ 403.00 _____ per month for 60 __ months. This monthly Plan Payment will begin within 30 days of the date the petition was filed.

B.  The base plan amount is $ 24,140.00 ___ which is estimated to pay 0.00 % of the allowed claims of nonpriority unsecured creditors. If that percentage is less than 100%, the Debtor will pay the Plan Payment stated in this Plan for the full term of the Plan or until the base plan amount is paid in full, and the Chapter 13 Trustee may increase the percentage to be paid to creditors accordingly.

C.  Amounts necessary for the payment of post petition claims allowed under 11 U.S.C. §1305.

D.  Preconfirmation adequate protection payments for any creditor who holds an allowed claim secured by personal property where such security interest is attributable to the purchase of such property and preconfirmation payments on leases of personal property whose allowed claim is impaired by the terms proposed in the plan. Preconfirmation adequate protection payments and preconfirmation lease payments will be paid to the Chapter 13 Trustee for the following creditor(s) in the following amounts:

| Creditor/Lessor Name | Collateral Description | Last 4 Digits of Account # | Amount |
|---|---|---|---|
| NONE | | | $        0.00 |
| | | | $        0.00 |
| | | | $        0.00 |

Each adequate protection payment or preconfirmation lease payment will commence on or before the 30th day from the date of filing of the case. The Chapter 13 Trustee shall deduct the foregoing adequate protection payment(s) and/or preconfirmation lease payment from the Debtor's Plan Payment and disburse the adequate protection payment or preconfirmation lease payment to the secured(s) creditor(s) at the next available disbursement or as soon as practicable after the payment is received and posted to the Chapter 13 Trustee's account. The Chapter 13 Trustee will take his or her statutory fee on all disbursements made for preconfirmation adequate protection payments or preconfirmation lease payments.

E.  Other property: NONE _____
(specify property or indicate none)

**II.  ORDER OF PAYMENTS; CLASSIFICATION AND TREATMENT OF CLAIMS:**
Except as otherwise provided in the Plan or by court order, the Chapter 13 Trustee shall disburse all available funds for the payment of claims as follows:

A.  ORDER OF PAYMENTS:

1.  If there are Domestic Support Obligations, the order of priority shall be:

(a)  Domestic Support Obligations and the Chapter 13 Trustee's fee not exceeding the amount accrued on payments made to date;

(b)  Administrative expenses (Class 1(a)) in an amount not exceeding 100.00 % of each Plan Payment until paid in full;

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised November 2006*                                                                      **F 3015-1.1**

Chapter 13 Plan (Rev. 11/06) - Page 3

2006 USBC, Central District of California

2. If there are no Domestic Support Obligations, the order of priority shall be the Chapter 13 Trustee's fee not exceeding the amount accrued on payments made to date, and administrative expenses ( Class 1(a)) in an amount not exceeding 100. % of each Plan Payment until paid in full.

3. Notwithstanding 1 and 2 above, ongoing payments on secured debts that are to be made by the Chapter 13 Trustee from the Plan Payment; such secured debt may be paid by the Chapter 13 Trustee commencing with the inception of Plan Payments.

4. Subject to 1, 2, and 3 above, pro rata to all other claims except as otherwise provided in the Plan.

5. No payment shall be made on nonpriority unsecured claims until all secured and priority claims have been paid in full.

B.  CLASSIFICATION AND TREATMENT OF CLAIMS:

### CLASS 1

### ALLOWED UNSECURED CLAIMS ENTITLED TO PRIORITY UNDER 11 U.S.C. §507

The Debtor will pay Class 1 claims in full; except the debtor may provide for less than full payment of Domestic Support Obligations pursuant to 11 U.S.C. §1322(a)(4).

| CATEGORY | AMOUNT OF PRIORITY CLAIM | INTEREST RATE, if any | MONTHLY PAYMENT | NUMBER OF MONTHS | TOTAL PAYMENT |
|---|---|---|---|---|---|
| **a. Administrative Expenses** | | | | | |
| (1) Chapter 13 Trustee's Fee – estimated at 11% of all payments to be made to all classes through this Plan. | | | | | |
| (2) Attorney's Fees | $ 3,000.00 | | $ 500.00 | 6 | $ 3,000.00 |
| (3) Chapter 7 Trustee's Fees (Specify Trustee Name) | $ 0.00 | | $ 0.00 | | $ 0.00 |
| (4) Other | $ 0.00 | | $ 0.00 | | $ 0.00 |
| **b. Other Priority Claims** | | | | | |
| (1) Internal Revenue Service | $ 0.00 | % 0.00 | $ 0.00 | | $ 0.00 |
| (2) Franchise Tax Board | $ 0.00 | % 0.00 | $ 0.00 | | $ 0.00 |
| (3) Domestic Support Obligation | $ 0.00 | % 0.00 | $ 0.00 | | $ 0.00 |
| (4) Other L.A. COUNTY TREASURER | $ 4,035.00 | % 18.00 | $ 102.46 | 60 | $ 6,147.75 |
| **c. Domestic Support Obligations that are not to be paid in full in the Plan (Specify Creditor Name):** | | | | | |
| NONE | $ 0.00 | % 0.00 | $ 0.00 | | $ 0.00 |

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised November 2006*

**F 3015-1.1**

## CLASS 2

### CLAIMS SECURED SOLELY BY PROPERTY THAT IS THE DEBTOR'S PRINCIPAL RESIDENCE
### ON WHICH OBLIGATION MATURES <u>AFTER</u> THE FINAL PLAN PAYMENT IS DUE

1. ☐ The post-confirmation monthly mortgage payment will be made by the Chapter 13 Trustee from the Plan Payment to:

2. ☒ The post-confirmation monthly mortgage payment will be made by the Debtor directly to:

WELLS FARGO HOME LOANS _____          0157092081 _____
      (name of creditor)                              (last 4 digits of account number)

_____          _____
      (name of creditor)                              (last 4 digits of account number)

**The Debtor will cure all prepetition arrearages for the primary residence through the Plan Payment as set forth below.**

| Name of Creditor | Last Four Digits of Account Number | Cure of Default | | | | |
|---|---|---|---|---|---|---|
| | | AMOUNT OF ARREARAGE | INTEREST RATE | MONTHLY PAYMENT | NUMBER OF MONTHS | TOTAL PAYMENT |
| WELLS FARGO HOME LOANS | 2081 | $ 12,600.00 | % 0.00 | $ 210.00 | 60 | $ 12,600.00 |
| CITIMORGAGE LOAN # 07713313661 | 3661 | $ 0.00  DEBTOR WILL MOVE VIA ADVERSARY COMPLAINT TO AVOID CONSENSUAL LIEN OF THIS CREDITOR (2ND TD) | % 0.00 | $ 0.00 | | $ 0.00 |

## CLASS 3

### CLAIMS SECURED BY REAL OR PERSONAL PROPERTY WHICH ARE PAID IN FULL
### DURING THE TERM OF THE PLAN

| Name of Creditor | Last Four Digits of Account No. | CLAIM TOTAL | SECURED CLAIM AMOUNT | INTEREST RATE | Equal Monthly Payment | NUMBER OF MONTHS | TOTAL PAYMENT |
|---|---|---|---|---|---|---|---|
| NONE | | $ 0.00 | $ 0.00 | % 0.00 | $ 0.00 | | $ 0.00 |
| | | $ 0.00 | $ 0.00 | % 0.00 | $ 0.00 | | $ 0.00 |

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Chapter 13 Plan (Rev. 11/06) - Page 5                                     2006 USBC, Central District of California

## CLASS 4

### OTHER SECURED CLAIMS ON WHICH THE LAST PAYMENT IS DUE AFTER THE DATE ON WHICH THE FINAL PAYMENT UNDER THE PLAN IS DUE

1. ☐ The post-confirmation monthly payment pursuant to the promissory note will be made by the Chapter 13 Trustee from the Plan Payment to:

2. ☐ The post-confirmation monthly payment pursuant to the promissory note will be made by the Debtor directly to:

NONE
_____          _____
            (name of creditor)                                   (last 4 digits of account number)

_____          _____
            (name of creditor)                                   (last 4 digits of account number)

**The Debtor will cure all prepetition arrearages on these claims through the Plan Payment as set forth below.**

| Name of Creditor | Last Four Digits of Account Number | Cure of Default | | | | |
|---|---|---|---|---|---|---|
| | | AMOUNT OF ARREARAGE | INTEREST RATE | MONTHLY PAYMENT | NUMBER OF MONTHS | TOTAL PAYMENT |
| NONE | | $    0.00 | %  0.00 | $    0.00 | | $    0.00 |
| | | $    0.00 | %  0.00 | $    0.00 | | $    0.00 |

## CLASS 5

### NON-PRIORITY UNSECURED CLAIMS

The Debtor estimates that non-priority unsecured claims total the sum of $11,915.00   .

Class 5 claims will be paid as follows:

(Check one box only.)

☒ Class 5 claims (including allowed unsecured amounts from Class 3) are of one class and will be paid pro rata.

OR

☐ Class 5 claims will be divided into subclasses as shown on the attached exhibit (which also shows the justification for the differentiation among the subclasses) and the creditors in each subclass will be paid pro rata.

## III. COMPARISON WITH CHAPTER 7

The value as of the effective date of the Plan of property to be distributed under the Plan on account of each allowed claim is not less than the amount that would be paid on such claim if the estate of the Debtor were liquidated under chapter 7 of the Bankruptcy Code on such date. The amount distributed to nonpriority unsecured creditors in chapter 7 would be $0.00      which is estimated to pay    0.00   % of the scheduled nonpriority unsecured debt.

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised November 2006*

**F 3015-1.1**

Chapter 13 Plan (Rev. 11/06) - Page 6                                    2006 USBC, Central District of California

## IV. PLAN ANALYSIS

| | | |
|---|---|---|
| **CLASS 1a** | $ | 3,000.00 |
| **CLASS 1b** | $ | 6,147.75 |
| **CLASS 1c** | $ | 0.00 |
| **CLASS 2** | $ | 12,600.00 |
| **CLASS 3** | $ | 0.00 |
| **CLASS 4** | $ | 0.00 |
| **CLASS 5** | $ | 0.00 |
| **SUB-TOTAL** | $ | 21,747.75 |
| **CHAPTER 13 TRUSTEE'S FEE (Estimated 11% unless advised otherwise)** | $ | 2,392.25 |
| **TOTAL PAYMENT** | $ | 24,140.00 |

## V. OTHER PROVISIONS

A. The Debtor rejects the following executory contracts and unexpired leases.

None _____

B. The Debtor assumes the executory contracts or unexpired leases set forth in this section. As to each contract or lease assumed, any defaults therein and Debtor's proposal for cure of said default(s) is described in Class 4 of this Plan. The Debtor has a leasehold interest in personal property and will make all post-petition payments directly to the lessor(s):

None _____

C. In addition to the payments specified in Class 2 and Class 4, the Debtor will make regular payments, including any preconfirmation payments, directly to the following:

None _____

D. The Debtor hereby surrenders the following personal or real property. (Identify property and creditor to which it is surrendered.)

None _____

E. The Debtor shall incur no debt greater than $500.00 without prior court approval unless the debt is incurred in the ordinary course of business pursuant to 11 U.S.C. §1304(b) or for medical emergencies.

F. Miscellaneous provisions: (Use Attachment, if necessary) Addendum to Chapter 13 Plan (F 3015-1.1A)

_____

G. The Chapter 13 Trustee is authorized to disburse funds after the date confirmation is announced in open court.

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised November 2006*                                    **F 3015-1.1**

H.  The Debtor will pay timely all post-confirmation tax liabilities directly to the appropriate taxing authorities as they come due.

I.   The Debtor will pay all amounts required to be paid under a Domestic Support Obligation that first became payable after the date of the filing of the petition.

## VI.  REVESTING OF PROPERTY

Property of the estate shall not revest in the Debtor until such time as a discharge is granted or the case is dismissed or closed without discharge. Revestment shall be subject to all liens and encumbrances in existence when the case was filed, except those liens avoided by court order or extinguished by operation of law. In the event the case is converted to a case under chapter 7, 11, or 12 of the Bankruptcy Code, the property of the estate shall vest in accordance with applicable law. After confirmation of the Plan, the Chapter 13 Trustee shall have no further authority or fiduciary duty regarding use, sale, or refinance of property of the estate except to respond to any motion for proposed use, sale, or refinance as required by the Local Bankruptcy Rules. Prior to any discharge or dismissal, the Debtor must seek approval of the court to purchase, sell, or refinance real property.

Dated: 01/01/2009                                           /s/ L. Bishop Austin
                                                 Attorney for Debtor L. Bishop Austin

                                                     /s/ Ana Elsa Perez
                                                 Debtor Ana Elsa Perez


                                                 Joint debtor

| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| **L. Bishop Austin**<br>**L. BISHOP AUSTIN & ASSOCIATES**<br>**3250 WILSHIRE BLVD., STE 1500**<br>**LOS ANGELES, CA 90010**<br>**(213) 388-4939 Fax: (213) 388-2411**<br>California State Bar Number: **175497**<br><br>☐ *Individual appearing without counsel*<br>☒ *Attorney for: Debtor* | |

<table>
<tr><td colspan="2" align="center"><b>UNITED STATES BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA</b></td></tr>
<tr><td>In re:<br><br><br>    <b>Ana Elsa Perez</b><br><br><br><br><br>                                    Debtor(s).</td><td>CHAPTER: <b>13</b><br><br>CASE NO.</td></tr>
</table>

### Addendum to Chapter 13 Plan Concerning Debtors Who are Repaying Debt Secured by a Mortgage on Real Property or a Lien on Personal Property the Debtor Occupies as the Debtor's Principal Residence

(A)    **Scope: Consumer Debts Secured by a Mortgage on Real Property, or Secured by Manufactured Housing that the Debtor Occupies as the Debtor's Principal Residence**

    (1)    For purposes of this Addendum, which is incorporated into the debtor's chapter 13 plan (the "Plan"), the term "Mortgage Creditor" includes all creditors whose claims represent consumer debts secured in whole or in part by a security interest in real property or manufactured housing, which real property or manufactured housing constitutes the debtor's principal residence. The provisions of this Addendum are effective until the earlier of: (a) dismissal of the case; (b) the closing of the case; (c) entry of an order granting the debtor a discharge; and (d) entry of an order terminating the automatic stay under 11 U.S.C. § 362(d) as the stay applies to the Mortgage Creditor.

    (2)    Except as provided in paragraphs (3) and (4) below, if the Mortgage Creditor provided monthly statements to the debtor pre-petition, the Mortgage Creditor must provide monthly statements to the debtor. The monthly statements must contain at least the following information concerning post-petition mortgage payments to be made outside the Plan:

        (a)    The date of the statement and the date the next payment is due;

        (b)    The amount of the current monthly payment;

        (c)    The portion of the payment attributable to escrow, if any;

        (d)    The post-petition amount past due, if any, and from what date;

        (e)    Any outstanding post-petition late charges;

        (f)    The amount and date of receipt of all payments received since the date of the last statement;

        (g)    A telephone number and contact information that the debtor or the debtor's attorney may use to obtain reasonably prompt information regarding the loan and recent transactions; and

        (h)    The proper payment address.

---

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*March 2008*
Software Copyright (c) 1996-2008 Best Case Solutions - Evanston, IL - (800) 492-8037

**F 3015-1.1A**
Best Case Bankruptcy

Addendum to Chapter 13 Plan Concerning Debtors Who are Repaying Debt Secured by a Mortgage
on Real Property or a Lien on Personal Property the Debtor Occupies as the Debtor's Principal Residence

| In re | CHAPTER **13** |
|---|---|
| **Ana Elsa Perez** | |
| Debtor(s). | CASE NUMBER.: |

(3)    No monthly statement will be required in this case where post-petition mortgage payments are to be made to the chapter 13 trustee through the Plan, unless the amount of the monthly payment is scheduled to change (because of adjustable interest rate, charges paid by the Mortgage Creditor for taxes, insurance, attorney's fees or any other expenses or fees charged or incurred by the Mortgage Creditor, such as property inspection fees, servicing fees or appraisal fees). If a Mortgage Creditor does send a monthly statement to the debtor or the chapter 13 trustee and the statement complies with subsection (B)(2) below, the Mortgage Creditor is entitled to the protections set out in such subsection.

(4)    If, pre-petition, the Mortgage Creditor provided the debtor with "coupon books" or some other preprinted, bundled evidence of payments due, the Mortgage Creditor is not required to provide monthly statements under subsection (2) of this section. However, the Mortgage Creditor must supply the debtor with additional coupon books as needed or requested in writing by the debtor. If a Mortgage Creditor does send a monthly statement to the debtor or the chapter 13 trustee and the statement complies with subsection (B)(2) below, the Mortgage Creditor is entitled to the protections set out in such subsection.

(5)    The Mortgage Creditor must provide the following information to the debtor upon the reasonable written request of the debtor:

(a)    The principal balance of the loan;

(b)    The original maturity date;

(c)    The current interest rate;

(d)    The current escrow balance, if any;

(e)    The interest paid year to date; and

(f)    The property taxes paid year to date, if any.

(6)    The Mortgage Creditor must provide the following information to the debtor, the debtor's attorney and, when the debtor is making ongoing mortgage or arrearage payments through the chapter 13 trustee, the chapter 13 trustee, at least quarterly, and upon reasonable written request of the debtor or the chapter 13 trustee: (a) any other amounts due or proposed change in payments arising from an adjustable interest rate, charges paid by the Mortgage Creditor for taxes, insurance, attorney's fees or any other expenses or fees charged or incurred by the Mortgage Creditor, such as property inspection fees, servicing fees or appraisal fees; (b) the nature of the expense or charge; and (c) the date of the payment.

(7)    If the secured consumer debt payable to the Mortgage Creditor is not modified by or paid through the Plan and the Mortgage Creditor believes the debtor to be in default, the Mortgage Creditor must send a letter alleging such default to the debtor and the debtor's attorney upon any perceived or actual default by the debtor and before taking any steps to modify the automatic stay.

(B)    **Form of Communication; Modification of the Automatic Stay; and Motions for Order to Show Cause**

(1)    For the purposes of this Addendum, Mortgage Creditors will be considered to have sent the requisite documents or monthly statements to the debtor or the debtor's attorney, as applicable, when the Mortgage Creditor has placed the required document in any form of communication, which in the usual course would result in the debtor and the debtor's attorney receiving the document, to the address that the debtor and the debtor's attorney last provided to the Court. The form of communication may include, but is not limited to, electronic communication, United States Postal Service or use of a similar commercial communications carrier.

---

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Addendum to Chapter 13 Plan Concerning Debtors Who are Repaying Debt Secured by a Mortgage
on Real Property or a Lien on Personal Property the Debtor Occupies as the Debtor's Principal Residence

| In re | CHAPTER 13 |
|---|---|
| Ana Elsa Perez | |
| Debtor(s). | CASE NUMBER.: |

(2)    To the extent that the automatic stay arising in this case would otherwise prohibit such conduct, the automatic stay is modified as follows: Mortgage Creditors who provide account information or monthly statements under subsections (A)(1-6) above will not be found to have violated the automatic stay by doing so, and Mortgage Creditors may contact the debtor about the status of insurance coverage on property that is collateral for the Mortgage Creditor's claim, may respond to inquiries and requests for information about the account from the debtor and may send the debtor statements, payment coupons or other correspondence that the Mortgage Creditor sends to its non-debtor customers, without violating the automatic stay. In order for communication to be protected under this provision, the communication must indicate it is provided for information purposes and does not constitute demand for payment.

(3)    As a result of a Mortgage Creditor's alleged non-compliance with this Addendum, the debtor may file a Motion for Order to Show Cause in compliance with Local Bankruptcy Rule 9020-1 no earlier than sixty days after the Mortgage Creditor's failure to comply with sections (A) or (B). Before filing the motion, the debtor must make good faith attempts in writing to contact the Mortgage Creditor and to determine the cause of any non-compliance, and must indicate in the Motion for Order to Show Cause the good faith steps taken, together with a summary description of any response provided by the Mortgage Creditor.

(4)    If a Mortgage Creditor's regular billing system can provide a statement to the debtor that substantially complies with this Addendum, but does not fully conform to all of its requirements, the Mortgage Creditor may request that the debtor accept such statement. If the debtor declines to accept the non-conforming statement, a Mortgage Creditor may file a motion, on notice to the debtor, the debtor's attorney and the chapter 13 trustee, seeking a declaration of the Court that cause exists to allow such non-conforming statements to satisfy the Mortgage Creditor's obligations under this Addendum. For good cause shown, the Court may grant a waiver for purposes of this case and for either a limited or unlimited period of time.

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 3015-1.1A**

Software Copyright (c) 1996-2008 Best Case Solutions - Evanston, IL - (800) 492-8037

Addendum to Chapter 13 Plan Concerning Debtors Who are Repaying Debt Secured by a Mortgage
on Real Property or a Lien on Personal Property the Debtor Occupies as the Debtor's Principal Residence

| In re | CHAPTER **13** |
|---|---|
| **Ana Elsa Perez** | |
| Debtor(s). | CASE NUMBER.: |

## Instructions for Attaching

### Addendum to Chapter 13 Plan Concerning Debtors who are Repaying Debt Secured by a Mortgage on Real Property or a Lien on Personal Property the Debtor Occupies as the Debtor's Principal Residence

        This optional addendum concerns chapter 13 debtors who are repaying debt secured by a mortgage on real property or a lien on personal property the debtor occupies as the debtor's principal residence.

        A chapter 13 debtor may attach this addendum to his/her chapter 13 plan. This is a court-approved form and may not be altered, except for interlineations clearly marked on the court-approved form which are subject to the Court's review and approval upon consideration of the plan for confirmation. When attaching this form to the chapter 13 plan form (F 3015-1.1), the debtor must indicate in section V.F. (Page 6) of the chapter 13 plan form that the "Addendum to Chapter 13 Plan (F 3015-1.1A) is attached."

---

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*March 2008*

**F 3015-1.1A**

Software Copyright (c) 1996-2008 Best Case Solutions - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

<table>
<tr><td colspan="2">
Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number<br>
<strong>L. Bishop Austin</strong><br>
<strong>L. BISHOP AUSTIN & ASSOCIATES</strong><br>
<strong>3250 WILSHIRE BLVD., STE 1500</strong><br>
<strong>LOS ANGELES, CA 90010</strong><br>
<strong>(213) 388-4939 Fax: (213) 388-2411</strong><br>
California State Bar Number: 175497
</td><td>FOR COURT USE ONLY</td></tr>
</table>

☐ *Individual appearing without counsel*

☒ *Attorney for: Debtor*

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA

| In re: | CHAPTER: **13**<br>CASE NO. **2:09-bk-10002-AA** |
|---|---|
| | **SECTION 341(a) MEETING OF CREDITORS:**<br>DATE: **2/13/09**<br>TIME: **04:00 pm**<br>HEARING ROOM: **RM 103** |
| **Ana Elsa Perez** | **CONFIRMATION HEARING:**<br>DATE: 3/26/09<br>TIME: 09:30 am<br>PLACE: Crtrm 1375 |
| Debtor(s). | DEADLINE FOR OBJECTIONS TO PLAN:  _3/18/09_ *<br>(*8 days before the Section 341(a) meeting) |

## NOTICE OF SECTION 341(a) MEETING AND
## HEARING ON CONFIRMATION OF CHAPTER 13 PLAN
## WITH COPY OF CHAPTER 13 PLAN

1.  NOTICE IS HEREBY GIVEN to all creditors and other interested parties that on the above date and time and in the indicated courtroom, debtor(s) will seek court approval of the attached Chapter 13 plan.

2.  **Section 341(a) Meeting Location:**
    ☒ 725 South Figueroa Street, Lobby Level, Los Angeles     ☐ 411 West Fourth Street, Room 1-154, Santa Ana
    ☐ 21051 Warner Center Lane, Suite 115, Woodland Hills     ☐ 128 East Carrillo Street, Santa Barbara
    ☐ 3420 Twelfth Street, Riverside

3.  **Chapter 13 Plan Confirmation Location:**
    ☒ 255 East Temple Street, Los Angeles     ☐ 411 West Fourth Street, Santa Ana
    ☐ 21041 Burbank Boulevard, Woodland Hills     ☐ 1415 State Street, Santa Barbara
    ☐ 3420 Twelfth Street, Riverside

4.  **OBJECTIONS TO PLAN:** If you wish to object to the confirmation of the Chapter 13 plan,  you must file a written objection with the Bankruptcy Court and serve a copy of it upon the debtor(s), the attorney for the debtor(s), and the Chapter 13 trustee before the deadline set forth above.  Unless you timely file a written objection to the plan and appear at the confirmation hearing, the Court may treat your failure to do so as a waiver of your right to object to the plan, and may approve the plan.

5.  **APPEARANCE BY DEBTOR(S) AND THE ATTORNEY FOR THE DEBTOR(S) IS REQUIRED AT BOTH THE SECTION 341(a) MEETING AND THE CONFIRMATION HEARING.**  If the Chapter 13 trustee finds at the Section 341(a) meeting that the case is ready for confirmation, the trustee may, but is not required to, stipulate that the debtors and counsel are excused from appearance at the confirmation hearing (if  the assigned judge permits the trustee to waive appearances). If the Chapter 13 trustee finds at the Section 341(a) meeting that the case is NOT ready for confirmation, the trustee may, but is not required to, continue the Section 341(a) meeting and/or the confirmation hearing to a later date.  **Unexcused failure by the debtor(s) to appear at either the Section 341(a) meeting or the confirmation hearing may result in dismissal of the case. The dismissal order may include a prohibition on filing any other bankruptcy case for a period of 180 days pursuant to 11 U.S.C. § 109(g).**

Dated:    **January 2, 2009**

_Signature of Debtor(s) or Attorney for Debtor(s)_
**L. BISHOP AUSTIN & ASSOCIATES**
*Print Law Firm Name (if applicable)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised December 2002*
Software Copyright (c) 1996-2005 Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

**F 3015-1.2**
Best Case Bankruptcy

| In re | CHAPTER **13** |
|---|---|
| **Ana Elsa Perez** | |
| Debtor(s). | CASE NO.: **2:09-bk-10002-AA** |

# PROOF OF SERVICE

STATE OF CALIFORNIA
COUNTY OF **California**

1.  I am over the age of 18 and not a party to the within action. My business address is as follows:
    3250 Wilshire Blvd., Ste 1500
    Los Angeles, CA 90010

2.  **Regular Mail Service:** On $01-2-09$ , pursuant to Local Bankruptcy Rule 9013-1, I served the documents described as: NOTICE OF HEARING ON CONFIRMATION OF CHAPTER 13 PLAN WITH COPY OF CHAPTER 13 PLAN on the interested parties at their last known address in this action by placing a true and correct copy thereof in a sealed envelope with postage thereon fully prepaid in the United States Mail at **Los Angeles,** California, addressed as set forth on the attached list.

3.  **See attached list for names and addresses of all parties and counsel that have been served.**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: **January 2, 2009**

Moises Lopez
*Type Name*

*Moises Lopez*
*Signature*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

ANA ELSA PEREZ
1310 W. 218TH STREET
TORRANCE, CA 90501

L. BISHOP AUSTIN
L. BISHOP AUSTIN & ASSOCIATES
3250 WILSHIRE BLVD., STE 1500
LOS ANGELES, CA 90010

U.S. TRUSTEE OFFICE
725 S. FIGUEROA ST
26TH FL
LOS ANGELES, CA 90012

WELLS FARGO HOME MORTGAGE
PO BOX 1225
CHARLOTTE, NC 28201

BANK OF AMERICA
PO BOX 15726
WILMINGTON, DE 19886

CHAPTER 13 TRUSTEE KATHY A
DOCKERY
700 S. FLOWER ST., STE 1950
LOS ANGELES, CA 90017

CITIMORTGAGE
PO BOX 6006
THE LAKES, NV 88901

DISCOVER CARD
PO BOX 30395
SALT LAKE CITY, UT 84130

EQUIFAX
PO BOX 144717
ORLANDO, FL 32814

EXPERIAN
PROFILE MAINTENANCE
PO BOX 9558
ALLEN, TX 75013

GE MONEY BANK
PO BOX 960061
ORLANDO, FL 32896

HARBOR-UCLA MEDICAL CENTER
1000 WEST CARSON ST
#471
TORRANCE, CA 90502

L.A. COUNTY TREASURER
AND TAX COLLECTOR
PO BOX 54110
LOS ANGELES, CA 90054

THE CHILDREN'S PLACE PLAN
PROCESSING CENTER
DES MOINES, IA 50364

TRANS UNION CORP
ATTN: PUBLIC RECORDS DEPT
555 WEST ADAMS STREET
CHICAGO, IL 60661

WELLS FARGO AUTO FINANCE, INC
PO BOX 60966
LOS ANGELES, CA 90060

WELLS FARGO CARD SERVICES
PO BOX 30086
LOS ANGELES, CA 90030

WELLS FARGO HOME MORTGAGE
PO BOX 30427
LOS ANGELES, CA 90030

**EXHIBIT E**

B6A (Official Form 6A) (12/07)

In re   **Ana Elsa Perez**                                                      Case No.   **2:09-bk-10002-AA**
                                    Debtor

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **Debtor's residence**<br>**Property address: 1308-1310 W 218th St., Los Angeles, CA 90501**<br>**FMV provided from property appraisal dated 1/9/2009** | **Fee simple** | - | **330,000.00** | **683,035.00** |

|  |  |  |
|---|---|---|
| Sub-Total > | **330,000.00** | (Total of this page) |
| Total > | **330,000.00** |  |

**0**   continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037

Best Case Bankruptcy